592 So.2d 453 (1991)
STATE of Louisiana
v.
Troy M. GARRIGA.
No. 91-KA-508.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1991.
Writ Denied April 20, 1992.
*454 Dorothy Pendergast, Asst. Dist. Atty., Gretna, for plaintiff/State.
*455 Philip E. O'Neill, Gretna, for defendant/appellant.
Before GRISBAUM, WICKER and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Troy Garriga, appeals his conviction of possession of over 400 grams of cocaine, a violation of LSA-R.S. 40:967 F. Defendant pled guilty to the charge pursuant to State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving his right to appeal. He was thereafter sentenced to fifteen years imprisonment at hard labor, with credit for time served, and was also ordered to pay a fine of $250,000.
The issue on appeal is whether the trial judge erred in denying defendant's motion to suppress the evidence. We affirm.
Defendant arrived from the Los Angeles, California area on flight 824 at 7:30 a.m. on February 1, 1990. Narcotics officers Glen Davis and Jarrad Simone, who were working undercover duty at the time, were observing the passengers arriving on this particular flight because Los Angeles is considered to be a source city for narcotics. Neither officer had specific information about anyone on the plane but the officers routinely checked the passengers on this flight because of its origination from Los Angeles.
The police officers testified at the suppression hearing that the defendant caught their attention when he exited the gate. He began looking around, nervously, and not in a manner normally associated with deplaning passengers. The officers, who were not dressed in uniform and were standing near the gate exit, stated that he also made unusual and prolonged eye contact with them for an extended length of time as he scanned the area. The officers noted he did not have carry-on luggage. As a result of their suspicions they followed him to the baggage claim section of the airport. Once there the officers observed defendant move his single piece of luggage from the claim area and approach a waiting taxi where he requested a ride to a downtown New Orleans hotel.
Before the defendant could enter the taxi, they approached him, identified themselves as police officers and asked if they could speak with him. They stated that he agreed. Officer Davis questioned the defendant concerning where he was arriving from and his purpose for being here. Defendant stated he was arriving from Los Angeles to visit family and friends. He produced his plane ticket upon request and the officers noted it was a one-way, full fare ticket, costing $394.00, which had been purchased with cash. The ticket showed the name "Troy Briant".
The officers then requested that the defendant produce identification and he presented a California driver's license in the name of "Troy Briant". The officers testified that the defendant became increasingly nervous during the conversation and that his hands were trembling and his breathing became labored.
The officers told the defendant that they were narcotics officers and asked for permission to search his luggage. They testified that he consented. They asked him if he would mind stepping inside the airport door, to get out of the passageway and to avoid the noise caused by construction. He agreed and the three moved back into the building.
Officer Davis requested defendant's key to the luggage and the officers testified he handed the key to Officer Simone. When the officer reached inside the suitcase he found a square package wrapped in cellophane and duct tape consistent with the size and weight of cocaine. The officers stated defendant told them "there's more" and a continued search disclosed a total of five kilograms of a substance that later tested positive for cocaine in a preliminary field test performed by Officer Davis.
The officers stated that they then placed defendant under arrest, advised him of his rights and transported him to the Kenner police station. A search of defendant revealed $4,300 in cash in his jacket pocket. Other identification in his wallet revealed his name to be Troy Garriga, not Troy Briant.
*456 The defendant testified in his own defense at trial of the suppression hearing. He contended his behavior was not unusual, that the reason he was looking around was to see where to go. He said the officers approached him and presented their badges as soon as they heard him tell the cab driver he wanted to go downtown. He contended they approached from each side.
The defendant stated he told the officers he was from Ontario in San Bernadino County, rather than Los Angeles. He explained to the court that the name on his driver's license and airline ticket was his mother's maiden name and he was using it to establish credit which was, he contended, commonly done in California to re-establish a credit history. Defendant stated he then produced his ticket for the officers, pursuant to their requests. He stated that during this period of questioning he did not feel free to leave due to the positioning of the officers and their manner in questioning him.
The defendant testified that the officers informed him they were narcotics agents and that they were having problems with contraband arriving from the West Coast. They then asked if they could search his bag. Defendant stated he refused but they told him they were going to search it anyway. He contended one of the agents grabbed the bag as they were heading back into the terminal and insisted on searching it. Defendant stated the officer asked for the key to the bag and the defendant replied it was in his jacket pocket. The officer reached into his pocket, retrieved the key, opened the bag, and found the cocaine. Defendant testified further that the officers at no time returned his license or plane ticket and never informed him he was free to leave. He insisted that he never gave them permission to search the bag and that he felt compelled to submit to the officers' interrogation.
Defendant was arrested and charged with possession of over 400 grams of cocaine. He initially pled not guilty and a motion to suppress the evidence was thereafter filed. A hearing was heard on the motion on June 15, 1990, after which the trial judge denied the motion concluding there was no "seizure", within the meaning of the Fourth Amendment. He further concluded that the conversation with defendant was justified because they had reasonable suspicion he was engaged in the commission of a crime. He also found the defendant voluntarily and without coercion consented to the search.
Defendant asserts he neither fit the "drug courier profile" nor was his behavior such that the officers had "reasonable suspicion" to stop him at the airport.
The United States and the Louisiana Constitutions prohibit unreasonable searches and seizures. U.S. Const. Amend. 4; La. Const., Art. 1, Sec. 5. However, the purpose of these provisions is not to eliminate all contact between law enforcement officers and citizens. As long as a reasonable person would feel free to walk away, there has been no seizure and no objective justification is required for the encounter. See Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
The distinction between a permissible encounter and a seizure was set forth in Royer, 103 S.Ct. at page 1324 as follows:
Second, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.... Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification.... The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.... He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.... If there is no detention *457 no seizure within the meaning of the Fourth Amendmentthen no constitutional rights have been infringed. (citations omitted)
In United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, (1980), reh. den., 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980), the court concluded a seizure occurs:
[o]nly if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. See Terry v. Ohio, supra, 392 U.S. [1], at 19, n. 16, 88 S.Ct. [1868], at 1879, n. 16 [20 L.Ed.2d 889 [(1968) ]; Dunaway v. New York, 442 U.S. 200, 207, and n. 6, 99 S.Ct. 2248, 2253, 60 L.Ed.2d 824 [1979]; 3 W. LaFave, Search and Seizure 53-55 (1978). In the absence of some evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. (emphasis added)
Law enforcement officers have the right to stop and interrogate persons only upon reasonable suspicion of criminal conduct. LSA-C.Cr.P. art. 215.1;[1]Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This is a limited seizure or investigatory stop.
In Terry, supra, 88 S.Ct. at page 1880, the Supreme Court stated:
And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate? Cf. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Beck v. State of Ohio, 379 U.S. 89, 96-97, 85 S.Ct. 223, 229, 13 L.Ed.2d 142 (1964).
Although not specifically stated in Terry, supra, the United States Supreme Court in United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) unequivocally stated that reasonable suspicion of criminal activity warranted a temporary seizure to conduct questioning limited to the purpose of the stop.
In U.S. v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the United States Supreme Court addressed the concept of reasonable suspicion. The court stated:
The officer, of course, must be able to articulate something more than an "inchoate and unparticularized suspicion or `hunch'".... The Fourth Amendment requires "some minimal level of objective justification" for making the stop.... *458 That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means "fair probability that contraband or evidence of a crime will be found," ... the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause....
The concept of reasonable suspicion, like probable cause, is not "readily, or even usefully, reduced to a neat set of legal rules." ... We think the Court of Appeals' effort to refine and elaborate the requirements of "reasonable suspicion" in this case create unnecessary difficulty in dealing with one of the relatively simple concepts embodied in the Fourth Amendment. In evaluating the validity of a stop such as this, we must consider "the totality of the circumstancesthe whole picture." ... As we said in [United States v.] Cortez [449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)]:
"The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the sameand so are law enforcement officers."
U.S. v. Sokolow, supra, 109 S.Ct. at p. 1585.
The Supreme Court in Sokolow concluded that the DEA agents had reasonable suspicion to conduct an investigative stop of a suspected drug courier based on the following information: (1) defendant paid $2100.00 for two round-trip plane tickets from a roll of $20.00 bills; (2) he traveled under a name that did not match the name under which his telephone number was listed; (3) his original destination was Miami, a source city for illicit drugs; (4) he stayed in Miami for only 48 hours, even though a round-trip ticket from Honolulu to Miami takes 20 hours; (5) he appeared nervous during his trip; and (6) he checked none of his luggage. The Court concluded that any one of these factors is not by itself proof of illegal conduct and is quite consistent with innocent travel, however "we think taken together they amount to reasonable suspicion". The Sokolow opinion dealt directly with the probative value of the factors comprising the drug courier profile, stating as follows:
We do not agree with respondent that our analysis is somehow changed by the agents' belief that his behavior was consistent with one of the DEA's "drug courier profiles". Brief for Respondent 14-21. A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion, but the fact that these factors may be set forth in a "profile" does not somehow detract from their evidentiary significance as seen by a trained agent. (Emphasis added)
U.S. v. Sokolow, supra 109 S.Ct. at p. 1587.
In State v. Davis, 547 So.2d 1367 (La. App. 5 Cir.1989), writ denied, 556 So.2d 53 (La.1990), this Court thoroughly discussed the law on airport detentions in light of Sokolow. The court in Davis discussed United States Supreme Court cases, Louisiana Supreme Court cases, and cases arising out of this Circuit dealing with airport detentions.
In Davis, this Court concluded under a "totality of the circumstances" standard, that the following facts justified an investigatory stop: (1) Defendant arrived in New Orleans aboard a non-stop flight from Los Angeles, a known source city for drugs; (2) he was one of the first passengers to deplane and his nervous demeanor attracted the attention of the officer; (3) as defendant walked up the concourse, he kept looking around to see if he was being watched or followed; (4) at the baggage claim area, defendant paced nervously until the flight bag arrived and he kept looking to see if he was the subject of surveillance; (5) after claiming a single piece of luggage, he went to the cab stand, still acting nervously; (6) when the detective approached him at the cab stand, defendant agreed to speak with him and further agreed to produce his airline ticket and driver's license. At this *459 time, the officer noticed his hands were trembling; (7) the airline ticket was a oneway ticket purchased with cash; and (8) defendant's speech became broken and his breathing became labored. It was at this point the detective identified himself as a narcotics officer and asked defendant if he was carrying any contraband or drugs.
The court concluded that the foregoing facts, considered under the "totality of the circumstances" standard, constituted sufficient grounds for the trial court's finding that reasonable suspicion justifying an investigatory stop of defendant existed.
In the present case, when the officers first approached defendant, there was no "seizure" within the meaning of the Fourth Amendment. U.S. v. Mendenhall, supra. There is no objective indication that defendant was not free to leave or walk away from the initial encounter. The officers were not in uniforms nor did they display any weapons. The entire encounter appears to have taken place with defendant's consent and cooperation and occurred in a public area.
After the initial questioning, defendant produced his airline ticket and driver's license pursuant to the officer's request. After examining these documents, the officers identified themselves as narcotics detectives and asked defendant for permission to search his bag. It was at this point that the encounter was transformed from consensual in nature to an investigatory stop within the meaning of Terry, supra. Using a "totality of the circumstances" standard, it can be said that the officers had reasonable suspicion to justify such a stop. The following facts support reasonable suspicion: (1) defendant was arriving on a flight originating in Los Angeles, a source city for drugs. (2) as defendant exited the plane and walked up the concourse, he repeatedly looked around in a nervous manner; (3) defendant made unusual and prolonged eye contact with the officers; (4) while in the baggage claim area, defendant kept looking around nervously; (5) he retrieved one bag, exited the airport, and asked for a cab to take him to a downtown New Orleans hotel; (6) when the officers approached defendant at the cab stand, defendant agreed to speak with them and further agreed to produce his airline ticket and driver's license. At this time, the officers noticed that defendant became increasingly nervous, began trembling and his breathing became labored; (7) the airline ticket was a one-way full fare ticket purchased with cash.
Based on the facts as previously set forth and in light of the Sokolow and Davis opinions, it appears that under a "totality of the circumstances" standard, the officers had reasonable suspicion justifying an investigatory stop of defendant. Moreover, these facts must be considered in light of the fact that the officers have specific training and considerable experience on the narcotics squad in airport surveillance. State v. Davis, supra and State v. Vanderlinder, 575 So.2d 521 (La.App. 5 Cir.1991), writ denied, 580 So.2d 377 (La. 1991). See also State v. Wiley, 507 So.2d 841 (La.App. 5 Cir.1987); and State v. Temple, 572 So.2d 662 (La.App. 5 Cir.1990).
Having determined that there was reasonable suspicion to justify an investigatory stop of defendant, the final issue which must be considered is the validity of the search pursuant to the alleged consent.
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Once a defendant makes an initial showing that a warrantless search occurred, the burden of proof shifts to the state to affirmatively show that the search is justified under one of the narrow exceptions to the rule requiring a search warrant. State v. Hernandez, 410 So.2d 1381 (La.1982). One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. State v. Owen, 453 So.2d 1202 (La.1984).
When the state seeks to rely upon consent to justify the lawfulness of a *460 search, it has the burden of proving the consent was given freely and voluntarily. Voluntariness is a question of fact to be determined by the trial judge under the facts and circumstances of each case. State v. Ossey, 446 So.2d 280 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984). The factual determinations of the trial judge are entitled to great weight on appellate review. State v. Ossey, supra; State v. Davis, supra.
The testimony of the officers indicate that defendant was very cooperative throughout the whole encounter and consented to the search of his suitcase. In fact, defendant even handed the officer the key to the suitcase and informed the officer that "there's more" cocaine in the suitcase. In contrast to this testimony, the defendant testified that he did not consent to the search. The trial judge obviously chose to believe the testimony of the police officers that defendant consented freely and voluntarily. Voluntariness is a question of fact to be determined by the trial judge. We cannot say that he erred in finding the defendant consented and did voluntarily and without coercion. We find therefore that the motion to suppress was properly denied.
Accordingly, the defendant's conviction is hereby affirmed.
AFFIRMED.
NOTES
[1] Art. 215.1 reads as follows:

A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.