772 So.2d 772 (2000)
STATE of Louisiana
v.
Claude QUEST.
No. 00-KA-205.
Court of Appeal of Louisiana, Fifth Circuit.
October 18, 2000.
*776 Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, Louisiana, Attorney for Appellant Claude Quest.
*777 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Parish of Jefferson, State of Louisiana, Rebecca J. Becker Counsel of Record on Appeal, Terry Boudreaux Appellate Counsel, Robert L. Odinet Trial Counsel, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Appellee State of Louisiana.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and JAMES C. GULOTTA, Pro Tem.
CANNELLA, Judge.
The Defendant, Claude Quest, appeals from his conviction of possession with intent to distribute heroin, a violation of La. R.S. 40:966(A). We affirm the conviction and sentence and remand.
The Defendant and co-Defendant, Princess McKay (McKay), were indicted by a grand jury and charged with possession with intent to distribute heroin on May 21, 1998. The Defendant pled not guilty at his arraignment on June 4, 1998. Subsequently, he filed motions to suppress evidence and a statement and to sever, all of which were denied after separate hearings.
Prior to trial, both the Defendant and McKay waived their rights to a jury trial. Following the bench trial on April 20 and 21, 1999, the Defendant was found guilty as charged and McKay was found not guilty. The Defendant was sentenced to life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence. An oral motion to reconsider sentence was denied.
The Defendant appeals from the trial court's denial of his motions to suppress evidence and a statement, to sever and for a new trial. He also complains that the verdict was contrary to the law and evidence presented at trial, and thus insufficient to convict him of the charge.
On March 26, 1998, there was a disturbance at the Hibernia Bank located on Williams Boulevard in Kenner involving the Defendant, McKay, and an unknown person. Don Whatley (Whatley), the bank manager, intervened because the parties were blocking one of the drive-up lanes. McKay was yelling and beating on the cab and window of a pick-up truck in front of her vehicle in or near the drive-up lanes of the bank. Apparently, there was a dispute between McKay and the person in the pick-up truck regarding a check.
Whatley asked the parties to leave the bank premises. When they refused, he told them he was going to call the police. Before Whatley could call the police, he saw a police car nearby and flagged it down. Whatley explained the problem to Sergeant Thomas Allen and stated that he wished to press charges. In his statement to the policeman, he indicated that both the Defendant and McKay were causing the disturbance. At trial and in the hearing on the motion to suppress, Whatley stated that when he went outside to intervene in the dispute, the Defendant was trying to get McKay to get into their vehicle and that the Defendant did not yell or pound on the pick-up truck.
Sergeant Allen was off-duty and on his way home. Upon learning about the problem, he separated the parties, instructing the Defendant and the unidentified male to stay near the unidentified male's pick-up truck. He sent McKay to the Defendant's Blazer. At this time, McKay was still yelling and was very fidgety. Shortly after, Officer Christopher Mitchell arrived at the scene. After being briefed by Sergeant Allen, Officer Mitchell talked with the Defendant.
In the meantime, Sergeant Allen was standing with McKay by the Blazer. McKay's two young children were in the backseat. According to Sergeant Allen, McKay initially sat down in the front driver's seat of the Blazer. She then got up and leaned into the back seat where the two children were sitting. As she leaned over the front seat, McKay grabbed her child's shoe as if to tie it. However, Sergeant *778 Allen, who was standing in the open doorway of the vehicle, testified that McKay actually untied the child's shoe and then started to re-tie it. As he watched, McKay removed one hand from her blouse and threw a prescription pill bottle onto the back seat, while she continued to tie her child's shoe.[1]
At that point, Sergeant Allen instructed McKay to stand by Officer Mitchell. Sergeant Allen then seized the pill bottle. As he did so, one of the children, who was approximately five years old, said, "that's my mama's medicine." (R., p. 146). After he took the pill bottle, Sergeant Allen saw that the bottle lacked a prescription label on the outside and that it did not contain medication or pills. He opened the bottle and discovered foiled packets similar to those used to hide narcotics. Sergeant Allen gave the pill bottle to Officer Mitchell and then left the scene. Officer Mitchell, in turn, gave the bottle to Detective Sandino, a narcotics detective, who was called to the scene to field test for narcotics the unknown off-white substance found in the foiled packets. It was determined that the substance was heroin.
The Defendant and McKay were initially arrested at the scene for disturbing the peace. Later that day during questioning, the Defendant gave a statement admitting that the heroin belonged to him and that he was a dealer. Thereafter, he was charged with possession with intent to distribute heroin.
Approximately two weeks after the incident, Sergeant Allen saw McKay at the police station where he discovered that McKay had not been arrested on the narcotics charge.[2] As a result, Sergeant Allen obtained an arrest warrant for McKay on the narcotics charge.
Officer Mitchell testified that McKay was not charged with possession of heroin because the Defendant admitted that the heroin belonged to him. However, he also stated that initially he was not fully aware of the circumstances surrounding the discovery of the pill bottle containing the heroin and that Sergeant Allen merely told him that he found the pill bottle in the vehicle. Officer Mitchell did not learn until later that Sergeant Allen actually saw McKay take the pill bottle out of her blouse.

I. SUPPRESSION OF EVIDENCE AND STATEMENT

In his first assignment of error, the Defendant argues that the trial judge erred in failing to suppress both the heroin and his statement. He contends that the police did not have probable cause to arrest him. Therefore, both the heroin and his statement were the fruits of an illegal arrest. The Defendant also argues that his statement was not free and voluntary because he was on heroin at the time he gave the statement and he was induced to give the statement by promises of leniency.
The State responds that the police were responding to a call for a disturbance of the peace in which the Defendant was involved. As such, the State argues that the police had probable cause to arrest the Defendant because they believed that the Defendant had committed an offense. In addition, the State argues that the heroin was properly admitted because it was seized under the plain view and automobile exceptions to the warrant requirement.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit *779 unreasonable searches and seizures. Generally, searches may be conducted only pursuant to a warrant which has been issued by a judge on the basis of probable cause. La.C.Cr.P. art. 162. Warrantless searches and seizures are considered unreasonable per se, unless justified by a specific exception to the warrant requirement. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); State v. Moreno, 619 So.2d 62, 66 (La.1993); State v. Green, 97-702 (La.App. 5th Cir. 12/30/97), 706 So.2d 536, 538. The state bears the burden of proving that one of the warrantless search exceptions applies. State v. Green, 706 So.2d at 538; State v. Gassenberger, 99-321, p. 5 (La. App. 5th Cir. 10/26/99), 750 So.2d 1002, 1004. Whether evidence was seized in violation of the Fourth Amendment is a determination for the trial judge, whose factual findings are entitled to great weight on appeal. State v. Henderson, 99-471 (La.App. 5th Cir. 10/26/99), 746 So.2d 173, 176.
A recognized exception to the warrant requirement is a search conducted incident to a lawful arrest. State v. Green, 706 So.2d at 537. An arrest is lawful when it is based on probable cause. State v. Raheem, 464 So.2d 293, 296 (La.1985); State v. Green, 706 So.2d at 538; State v. Joseph, 99-1234 (La.App. 5th Cir. 3/22/00), 759 So.2d 136, 139. Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed or is committing a crime. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, 1331, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Green, 706 So.2d at 538. An arrest without probable cause is illegal and the seizure of evidence pursuant thereto is also illegal. Id.; State v. Washington, 98-545 (La.App. 5th Cir. 12/16/98), 725 So.2d 587, 590.
The Defendant was initially arrested for disturbing the peace. Disturbing the peace is defined, in part, in La. R.S. 14:103(A)[3] as:
A. Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:
(1) Engaging in a fistic encounter; or
(2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty; or....
In his narrative report, Sergeant Allen stated that both the Defendant and McKay beat on the vehicle in front of theirs and yelled and cursed at the driver. At trial, Sergeant Allen testified that this information was based on what he was told by Whatley. Whatley told Sergeant Allen that the Defendant and McKay instigated a disturbance, were blocking the drive-up lane and refused to leave. He said that he wanted them removed. Sergeant Allen testified that neither the Defendant nor the other male caused him any problems when he spoke to them. He only had problems with McKay.
The probable cause affidavit executed by Officer Mitchell, the arresting officer, noted that the Defendant "was arrested after he was involved in a disturbance in which he continuously yelled and cursed in a public place." Officer Mitchell testified that his affidavit was based on a statement which he took from Whatley at the scene.
At both the motion to suppress and at trial, Whatley testified that when he was informed of the disturbance, he went out *780 to try to stop it. Whatley stated that "they" had been yelling and beating on the pick-up truck. Whatley told them to move their vehicle, because it was blocking the drive-up lane. However, neither the Defendant nor McKay made any effort to do so. At that point, the Defendant was not yelling or beating on the truck. Shortly after, Whatley expressed his decision to call the police and he flagged down Sergeant Allen. By that time, the Defendant was attempting to get McKay to get back into the vehicle.
Based on this evidence, we find that there was probable cause to arrest the Defendant for disturbing the peace. Furthermore, the pill bottle was found incidental to the arrest of both the Defendant and McKay for disturbing the peace. Thus, the seizure of the bottle of heroin was valid in this case.[4]
The Defendant also claims that his statement should also be suppressed because it was the result of his illegal arrest. Since the arrest was legal, the trial judge did not err in denying the motion to suppress the statement on that basis.
The Defendant next contends that his statement should be suppressed because it was not free and voluntary. As a result of his arrest, the Defendant was questioned, during which he voluntarily admitted that the heroin in the pill box found in his car belonged to him and that he had sold drugs in the past. He also told the police that had used heroin at 2:30 p.m. that afternoon.
Before an inculpatory statement, made during a custodial interrogation, may be introduced into evidence, the State must prove beyond a reasonable doubt that the Defendant was first advised of his Miranda[5] rights and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement or promises. La. R.S. 15:451; State v. Comeaux, 93-2729, p. 47 (La.7/1/97), 699 So.2d 16, 29, cert. denied, 522 U.S. 1150, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998); State v. Watts, 98-1073 (La.App. 5th Cir. 5/19/99), 735 So.2d 866, 869. A determination of voluntariness is made on a case-by-case basis, depending on the facts and circumstance of each situation. Watts, 735 So.2d at 869. The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. Id.
The Defendant alleges that his confession was not free and voluntary on two grounds. First, he argues that he was under the influence of heroin at the time of his statement. Second, he contends that he was induced to make the statement by promises of leniency to his co-Defendant and the children.
"Intoxication renders a statement involuntary only when the intoxication is of such a degree that it negates the defendant's comprehension and renders him or her unconscious of the consequences of what he or she is saying." State v. Narcisse, 426 So.2d 118, 125-125 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); Watts, 735 So.2d at 871. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact and a trial judge's conclusions on this issue will not be disturbed unless unsupported by the evidence. Watts, 735 So.2d at 871.
*781 The Defendant's statement was taken at the lock-up building by Officer Mitchell approximately 2½ hours after his arrest. At the time of his statement, the Defendant stated that he was on heroin and that he had last used heroin that day at 2:30 p.m. His statement was started at approximately 8:25 p.m. and concluded at 8:58 p.m. Officer Mitchell testified that the Defendant showed no signs of being on drugs or of being intoxicated. The Defendant's eyes were not glassy or bloodshot, which are signs of drug intoxication. The Defendant's speech and his ability to balance were normal. In addition, Whatley testified that, at the scene, the Defendant appeared coherent and did not appear intoxicated.
Based on the evidence, if the Defendant were under the influence of drugs, his alleged intoxicated state was not sufficient to vitiate the voluntariness of his statement. Thus, we find that the trial judge did not err in finding that the statement was freely and voluntarily given and that the trial judge did not err in denying the motion to suppress on that basis.
The Defendant also alleges that the State failed to demonstrate that he understood his rights. The statement in which the Defendant confessed to owning the heroin and selling drugs was written by Officer Mitchell and signed by the Defendant. Officer Mitchell formulated the questions, wrote the questions down, asked the Defendant the question, asked the Defendant to answer the question and then wrote the Defendant's answers down contemporaneously. Officer Mitchell stated that he read the statement to the Defendant, the Defendant had no objections to the statement, and the Defendant did not wish to add or delete anything from the statement. The statement was not recorded, as a matter of policy.
Officer Mitchell noted that the Defendant had a seventh grade education and that the statement was taken after he was advised of his rights, first in an Advice of Rights form that was read to him by Officer Mitchell, filled out by Officer Mitchell, and signed by the Defendant. Officer Mitchell stated that the Defendant did not have any questions regarding the Advice of Rights form. Defendant was again advised of his rights when he gave his voluntary statement. In particular, the top portion of the Voluntary Statement form contains a pre-printed section that again advises the Defendant of his rights. Officer Mitchell testified that he believed that the Defendant understood his rights.
In addition, the Defendant had prior experience as an accused in criminal proceedings. In one, he pled guilty and filled out a waiver of rights form. At trial, he testified that he understood his rights as delineated in that form.
In State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 284, the Louisiana Supreme Court considered the Defendant's criminal history and repeated exposure to his Miranda rights in determining that the Defendant understood his rights for purposes of giving a free and voluntary statement. The Supreme Court noted that while prior history with the criminal judicial system alone has never been considered a valid basis for determining the admissibility of a confession, the history is certainly a part of the "totality of the circumstances" which a trial judge may consider in determining a defendant's comprehension of his Miranda rights. The Supreme Court further noted that repetition is one method by which we learn and understand things.
Based on the Defendant's past experience with criminal proceedings and the advisement several times of his Miranda rights prior to his statement in this case, we find that the Defendant understood his rights prior to giving his statement and that it was voluntary.
Finally, the Defendant maintains that he gave his statement because of inducements of leniency. Under La. R.S. 15:451, a confession is not admissible unless it is affirmatively shown that it was free and voluntary and not made under *782 any influence of fear, duress, intimidation, menaces, threats, inducements or promises. The test for voluntariness requires a review of the totality of the circumstances under which the statement was given and any inducement offered is only one factor in the analysis. State v. Lavalais, 95-0320 (La.11/25/96), 685 So.2d 1048, 1053, Watts, 735 So.2d at 870.
Whenever a statement is taken without the presence of an attorney, a heavy burden rests upon the state to demonstrate that the accused knowingly and intelligently waived his privilege against self-incrimination and his right to have counsel present. State v. Davis, 407 So.2d 666, 670 (La.1981); State v. Dunn, 94-776 (La.App. 5th Cir. 2/15/95), 651 So.2d 1378, 1387. Allegations of specific instances of police misconduct in reference to a statement must be specifically rebutted by the state. State v. Serrato, 424 So.2d 214, 216 (La.1982); Dunn, 651 So.2d at 1387. The state may not rely on general disclaimers of inducements or promises, but it can meet the allegations prior to defendant's case-in-chief. Serrato, 424 So.2d at 216; Dunn, 651 So.2d at 1387
Suggestions that a defendant would be better off to cooperate are not "`promises or inducements designed to extract a confession.'" Watts, 735 So.2d at 870. In addition, a confession is not rendered inadmissible because officers "exhort or adjure" an accused to tell the truth, provided the exhortation is not accompanied by an inducement in the nature of a threat or which implies a promise of reward. State v. Robertson, 97-0177 (La.3/4/98), 712 So.2d 8, 31; Watts, 735 So.2d at 870.
In deciding the admissibility of a confession, the trial judge must consider the totality of the circumstances. Serrato, 424 So.2d at 216; Dunn, 651 So.2d at 1387. His decision in this regard is entitled to great weight and will not be overturned on appeal unless it is not supported by the evidence. Serrato, 424 So.2d at 216; Dunn, 651 So.2d at 1387.
In this case, the Defendant asserts that he was told by Officer Mitchell that his "wife" and children could go home if he confessed.[6] In particular, the Defendant testified that, "he told me: why don't you take the charge, since you've been busted for drugs before and let your children and your wife go home?" (R., p. 250). In addition, the Defendant claims that the police said they would help him if he knew someone on "this side of the river that had drugs." (R., p. 252). Officer Mitchell testified that he did not encourage the Defendant to make a statement in order to help McKay beat the charges.
The trial judge did not give reasons for its determination that the Defendant's statement was free and voluntary. Considering the conflicting testimony, it is reasonable to conclude that the trial judge chose to believe the testimony of Officer Mitchell and found that the alleged inducement was never made. However, even if it happened the way that the Defendant said, it did not rise to the level of inducement that infringed on the free and voluntary nature of the confession. The suggestion that the Defendant "take" the charge so his wife and children could go home does not make any reference to charging McKay with any crime. No promise were made that McKay would be charged or not charged depending on the Defendant's statement. Concerning the alleged statement that the police would help the Defendant if he gave them information about drugs on "this side of the river," a simple remark that the officer will help the Defendant, with nothing more, is insufficient to overcome the free and voluntary nature of a confession. State v. Roddy, 33,112 (La.App. 2nd Cir. 4/7/00), 756 So.2d 1272, 1277. Thus, we find that the statement was freely and voluntarily *783 made and that the trial judge did not err in denying the motion to suppress the statement.

II. MOTION TO SEVER

In the Defendant's second assignment of error, he contends that the trial judge erred in refusing to sever the trials because the defenses of the Defendant and McKay were antagonistic to each other.
La.C.Cr.P. art. 704 provides:
Jointly indicted defendants shall be tired jointly unless:
A) The state elects to try them separately; or
B) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
Whether justice requires a severance must be determined by the facts of each case. State v. Prudholm, 446 So.2d 729, 741 (La.1984); State v. Foret, 96-281 (La.App. 5th Cir. 11/14/96), 685 So.2d 210, 224. A defendant is not entitled to a severance as a matter of right, but the decision is one resting within the sound discretion of the trial court. Prudholm, 446 So.2d at 741; State v. Cedrington, 98-253 (La.App. 5th Cir. 12/16/98), 725 So.2d 565, 577, writs denied, 99-190 (La. 6/4/99), 743 So.2d 1249 and 99-431 (La.6/25/99), 745 So.2d 1182. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. Prudholm, 446 So.2d at 741; Cedrington, 725 So.2d at 577.
A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other, causing each defendant to defend against both his co-defendant and the state. Prudholm, 446 So.2d at 741; Cedrington, 725 So.2d at 577. The Defendant bears the burden of proof in such a motion. Mere unsupported allegation that defenses will be antagonistic is not sufficient to require a severance. Prudholm, 446 So.2d at 741; Foret, 685 So.2d at 224. Furthermore, the fact that each defendant has pointed a finger at the other does not make defenses automatically antagonistic. Prejudice must be shown if defendants are to receive separate trials. State v. Williams, 416 So.2d 914, 916 (La.1982); Cedrington, 725 So.2d at 577.
At the hearing on the motion to sever, no evidence was presented. Defense counsel merely alleged that the defenses were antagonistic to each other. Counsel stated, "I think our defenses will be antagonistic. I certainly intend to point the finger or point the blame to her client and she intends to do the same as to my client." The Defendant did not offer anything to substantiate his claim. Thus, he failed to demonstrate through convincing evidence how the defenses, even if antagonistic, would be prejudicial.
Furthermore, the evidence at trial failed to show that the two defenses were antagonistic. During McKay's testimony at trial she never blamed or pointed the finger at the Defendant. Rather, her defense was simply that she had no knowledge of the pill bottle or the heroin. The Defendant also testified. At no time did he state that the pill bottle or the heroin belonged to McKay. In fact, he testified that he did not see McKay with the heroin. Thus, neither co-defendant attempted to blame the other for the possession of the heroin. Thus, we find that the trial court did not abuse its discretion in denying the Defendant's motion to sever.
In the Defendant's third assignment of error, he asserts that the trial judge erred in denying his motion for new trial for several reasons. First, he maintains that he was forced to waive his right to a jury trial when the trial court denied his request for a severance. Second, the Defendant contends that the trial judge's failure to grant his pre-trial motion in limine, in which he sought to have a portion of his statement suppressed, resulted in the impermissible use of "other crimes" evidence. *784 And, finally, the Defendant claims there was insufficient evidence to convict him.[7]
Under La.C.Cr.P. art. 851, a motion for new trial is based upon the supposition that injustice has been done to the defendant and, unless such injustice is shown, the motion for new trial shall be denied no matter upon what allegations the motion is grounded. State v. Battie, 98-1296 (La.App. 5th Cir. 5/19/99), 735 So.2d 844, 855, writ denied, 99-1785 (La.11/24/99), 750 So.2d 980. The decision on a motion for a new trial rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Humphrey, 445 So.2d 1155, 1160 (La.1984); Battie, 735 So.2d at 855.

A) Waiver of the jury trial

The Defendant alleges that his waiver of a jury trial was invalid. In particular, he claims that the only reason he waived his right to a jury was because McKay was brought to court on the day of trial in prison clothes. In light of the trial court's denial of his motion to sever, the Defendant maintains that he would have been prejudiced to proceed before a jury with his co-defendant in prison clothes.
A defendant may waive his right to a jury trial and elect to be tried by the judge. La.C.Cr.P. art. 780. Generally, the waiver is to be entered at arraignment. However, the trial judge may accept a waiver of a jury trial at any time prior to the commencement of trial. C.Cr.P. art. 780(B). A waiver of trial by jury is valid only if the defendant acted voluntarily and knowingly. State v. Kahey, 436 So.2d 475, 486 (La.1983). The waiver must be express and is never presumed. Kahey, 436 So.2d at 486; State v. Herrera, 98-677 (La.App. 5th Cir. 2/10/99), 729 So.2d 75, 80. The record must show a knowing and intelligent waiver. State v. Williams, 99-223 (La.App. 5th Cir. 6/30/99), 742 So.2d 604, 606. While it is preferred for the trial judge to advise the defendant personally on the record of his right to a jury trial and have the defendant waive the right personally on the record, the Louisiana Supreme Court has refused to mandate this method as an absolute rule. Kahey, 436 So.2d at 486.
In the present case, on the day of trial, defense counsel advised the trial court that the Defendant wished to waive his right to a trial by jury. The trial judge then personally advised the Defendant on the record of his right to a jury trial. Also, on the record, the Defendant stated that he wished to waive his right to a jury trial. In addition to the express waiver, the transcript reveals that the Defendant was aware and alert and able to make appropriate answers to his attorney's questions and that he had previous experience as an accused in two criminal proceedings, including one where he pled guilty. These factors show that he understood the proceedings. Thus, considering the colloquy between the trial judge and the Defendant, as well as the Defendant's awareness of the proceedings, we find that he knowingly and intelligently waived his right to a jury trial.

B) Motion in limineOther crimes

The Defendant claims that the trial judge erred in failing to suppress the part of his confession that referred to other crimes, specifically, where he admitted to using heroin that day and to distributing drugs in New Orleans. He filed his motion in limine after the trial judge refused to suppress his entire statement.
Generally, every confession sought to be used against a defendant must be used in its entirety. La. R.S. 15:450. However, if the state seeks to introduce a confession which contains inadmissible references to *785 other crimes, the defendant has a right to request that the trial court excise all references to other crimes before the confession or statement is admitted into evidence. La. R.S. 15:450 provides that "Every confession, admission, or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford." State v. Van Winkle, 97-307 (La.App. 5th Cir. 10/28/97), 701 So.2d 1076, 1079.
Ordinarily, evidence of other acts of misconduct is inadmissible. However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain exceptions to this rule. State v. Silguero, 608 So.2d 627, 629 (La. 1992); State v. Johnson, 98-604 (La.App. 5th Cir.1999), 728 So.2d 901, 911, writ denied, 99-0624 (La.6/25/99), 745 So.2d 1187. Evidence of other crimes may be used to show proof of motive, opportunity, intent, preparation, plan, knowledge, or identity. Other crimes evidence is also admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." La. C.E. art. 404(B)(1); State v. Hayes, 98-485 (La.App. 5th Cir. 11/25/98), 726 So.2d 39, 44, writ denied, 99-0055 (La.5/7/99), 741 So.2d 29.
Intent is an essential element of the crime of possession with intent to distribute heroin. Previous attempts to distribute may be considered in establishing intent. State v. White, 98-91 (La.App. 5th Cir. 6/30/98), 715 So.2d 714, 717, writ denied, 98-2043 (La.11/25/98), 729 So.2d 577.
In Johnson, we held that evidence of a defendant's prior conviction for distribution of cocaine had independent relevance because it satisfied an element of the crime of unlawful possession of a firearm. In this case, the Defendant's admission that he sold drugs in the past has independent relevance in satisfying the intent element of the crime of possession with intent to distribute heroin.
The part of the Defendant's statement in which he admitted to using heroin does not appear to have any relevance other than to show his "bad character." The actual use of heroin does not satisfy or relate to any element of the crime of possession with intent to distribute heroin. Therefore, that portion of the Defendant's statement should have been excised. However, the admission is subject to the harmless error rule. State v. Johnson, 728 So.2d at 911. The analysis for determining harmless error is whether the verdict actually rendered in this case was surely unattributable to the error. Id.
In this case, the Defendant admitted that he was planning to sell the heroin in the pill bottle. In rendering the verdict, the trial judge also considered the amount of heroin contained in the packets and the fact that the Defendant had sold the drug in the past. Considering these factors, we conclude that the guilty verdict was not attributable to the error of allowing into evidence that portion of the Defendant's statement referring to his heroin use that day and that its admission was harmless. Based on the above, we find the trial court did not abuse its discretion in denying the Defendant's motion for new trial.

III. MOTION FOR NEW TRIAL

The Defendant next contends that the verdict was contrary to the law and evidence presented at trial and thus the evidence was insufficient to convict him of the charges. However, he does not specifically allege that the evidence was insufficient as to any one element of the crime with which he was charged. Rather, he argues that the evidence was much more compelling against McKay, and yet McKay was found not guilty. The Defendant complains that the trial court disregarded portions of the officer's testimony that incriminated *786 McKay and should have exonerated him.
The standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Barnes, 98-932 (La.App. 5th Cir. 2/10/99), 729 So.2d 44, 46.
La. R.S. 40:966(A), makes it unlawful for any person, knowingly and intentionally:
(1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule I.
The essential elements of the crime are 1) possession and 2) specific intent to distribute. Despite the Defendant's claim that there was more evidence to convict McKay than him, the issue for review is whether there was sufficient evidence to convict him.
The first element, "possession," includes both "actual" and "constructive" possession. State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324, 1331; State v. Williams, 98-1006 (La.App. 5th Cir. 3/30/99), 735 So.2d 62, 69, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. A person who was not in physical possession of narcotics may have constructive possession when the drugs are under that person's dominion or control. Williams, 735 So.2d at 69. In Williams, we stated the factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession as: 1) the defendant's knowledge that illegal drugs were in the area, 2) his relations with the person found to be in actual possession, 3) the defendant's access to the area where the drugs were found, 4) evidence of recent drug use by the defendant; 5) the existence of paraphernalia, and 6) evidence that the area was frequented by drug users. Id.
Here, the heroin was discovered in the Defendant's vehicle, he admitted that he owned the vehicle, and he admitted that the heroin belonged to him. This is sufficient to prove constructive possession.
The next essential element to the crime is intent to distribute. La. R.S. 14:10 defines specific criminal intent as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences as reasonably certain to result from his act or failure to act. The intent to distribute may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute. White, 715 So.2d at 717. Factors which may give rise to a reasonable inference that a defendant had the specific intent to distribute include 1) previous attempts to distribute, 2) whether the drug was in a form consistent with distribution to others, 3) the amount of the drug, 4) expert or other testimony showing the amount found in the defendant's possession to be inconsistent with personal use only, and 5) paraphernalia evidencing an intent to distribute. Id.
In this case, the Defendant admitted in his statement that he sold heroin and that he intended to sell the heroin that was in the pill bottle. However, at trial, he denied that he ever told Officer Mitchell, who took the Defendant's statement, that he sold drugs. In addition, there were 13 individual foil packets containing heroin in the pill bottle. However, there was no testimony that the amount of heroin was inconsistent with personal use.
In State v. Hearold, 603 So.2d 731 (La. 1992), the Louisiana Supreme Court found that a rational trier of fact could not have concluded beyond a reasonable doubt, solely on the evidence pertaining to the amount of the narcotic found in a single *787 bag, that the defendant was guilty of the "intent to distribute." However, there was evidence of prior drug distribution by defendant. The Supreme Court held that considering the totality of evidence, the prior drug distribution and the amount of drugs found in the bag, there was sufficient evidence to convict defendant of possession with intent to distribute.
Here, the trial judge, in a credibility determination, relied on the Defendant's statement rather than his testimony at trial and found that the Defendant admitted selling heroin in the past and that he intended to sell the heroin found in his car. The evidence further showed that the pill bottle contained 13 packets of heroin. Considering the Defendant's statements and the number of packets of heroin in the pill bottle, we find that, viewing the evidence in the light most favorable to the prosecution, the evidence is sufficient to convict the Defendant beyond a reasonable doubt.

IV. ERROR PATENT

La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. State v. Oliveaux, 312 So.2d 337, 339 (La.1975); State v. Boudreaux, 95-153 (La.App. 5th Cir. 9/20/95); 662 So.2d 22, 28.
In advising the Defendant of the prescriptive period for post-conviction relief, the trial judge failed to inform the Defendant that the prescriptive period runs from the date the judgment becomes final, as required by La.C.Cr.P. art. 930.8. However, immediately after the trial judge advised the Defendant of the prescriptive period for post-conviction relief, Defendant's counsel noted that the prescriptive period starts to run "after the appellate process has been finished."
At the time of the sentencing, La. C.Cr.P. art. 930.8 provided that a defendant has three years from the day the judgment becomes final in which to file an application for post conviction relief. An amendment to Article 930.8, which became effective on August 15, 1999, shortens that prescriptive period to two years. See: 1999 La. Acts 1262.[8] We held in State v. Boles, 99-662 (La.App. 5th Cir. 11/10/99), 750 So.2d 1059, 1062 that the amendment should be applied retroactively and a defendant, who was not informed of the prescriptive period for post-conviction relief, should be informed that the prescriptive period is two years. Compare: State v. Dickerson, 99-353 (La.App. 5th Cir. 1/28/00), 751 So.2d 425. In Boles, we stated that the application of the amended prescriptive period in a defendant's case would not violate expost facto prohibitions, as the article itself does not relate to an *788 offense or its punishment. Boles, 750 So.2d at 1062. Therefore, we will hereby order the trial court within ten days of the rendering of this opinion to send written notice to the Defendant of the amended prescriptive period and to advise him of when the period begins to run, and to file written proof in the record that the Defendant received said notice.
We also note that the commitment entry in the record contains two errors. First, the commitment reflects that the Defendant entered a plea and that he was advised of his rights in connection with that plea. However, that is an incorrect statement of the resolution of this case. Defendant was found guilty after a two-day bench trial. Second, the commitment entry contains an erroneous date of the conviction of the Defendant. The commitment indicates that on May 19, 1999 the Defendant was found guilty by a judge on one count of possession with intent to distribute heroin. However, he was found guilty on April 21, 1999.
These errors are clerical. Since a clerical error does not cause prejudice to a defendant's rights, such error does not merit reversal. State v. Gilmore, 522 So.2d 658, 661 (La.App. 5th Cir.1988). However, we will order an amendment of the commitment to delete the reference to a plea and to correct the conviction date.
Accordingly, we hereby order that the commitment be amended to reflect a judge trial and conviction on April 21, 1999, in conformity with this opinion. We further order the trial court to send to the Defendant, within ten days of the rendering of this opinion, written notice of the amended prescriptive period for post-conviction relief and notice as to when the period begins to run. The trial judge is further ordered to file written proof in the record that the Defendant received the notice.
The Defendant's conviction and sentence are otherwise hereby affirmed.
CONVICTION AND SENTENCE AFFIRMED; REMANDED.
NOTES
[1] At trial and at the motion to suppress hearing Sergeant Allen testified that he observed McKay throw the pill bottle onto the back seat. However, the narrative portion of the Property Continuation form, which was executed by Sergeant Allen, states that he observed McKay remove the pill bottle "from her front bra area and shove the pill bottle between the seat and the seat back cushions."
[2] McKay told Sergeant Allen that she was at the police station to learn how she could "take the charge" for the Defendant.
[3] It is unclear from the record whether the Defendant was arrested for disturbing the peace before or after the discovery of the pill bottle containing heroin.
[4] We also note that either the plain view or the automobile exception to the warrant requirement would apply in this case. See: State v. Henderson, 99-471 (La.App. 5th Cir. 10/26/99), 746 So.2d 173, writ denied, 99-3485 (La.5/26/00), 762 So.2d 1102 However, we need not address those issues.
[5] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[6] We assume the reference to his "wife" is a reference to McKay, with whom he has one child. At the time of trial, he and McKay had been dating for 4½ years.
[7] Defendant raises this same issue in his fourth assignment of error. As such, it is discussed infra.
[8] The amended article provides, in pertinent part:

A. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
* * * * * *
(3) The application would already be barred by the provisions of this Article, but the application is filed on or before October 1, 2001, and the date on which the application was filed is within three years after the judgment of conviction and sentence has become final.