864 So.2d 748 (2003)
STATE of Louisiana
v.
Douglas HOTARD.
No. 03-KA-435.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2003.
*750 Jane L. Beebe, Gretna, LA, for Appellant.
John M. Crum, District Attorney, Rodney A. Brignac, Assistant District Attorney, LaPlace, LA, for Appellee.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and CLARENCE E. McMANUS.
*751 JAMES L. CANNELLA, Judge.
The Defendant, Douglas Hotard, appeals from his convictions of two counts of indecent behavior with a juvenile and his concurrent sentences of eight and one-half years in prison. For the reasons which follow, we affirm and remand.

STATEMENT OF THE CASE
The Defendant was charged by a bill of information on June 14, 2001 with two counts of indecent behavior with a juvenile, a violation of La. R.S. 14:81. He pled not guilty and filed several pretrial motions. The Defendant proceeded to trial on June 4, 2002 before a six person jury. After a two day trial, the Defendant was found guilty as charged on both counts.
Thereafter, on November 14, 2002, the State filed a habitual offender bill of information alleging that the Defendant was a forth felony offender, based on a 1984 conviction for possession with intent to distribute Quaaludes and a 1989 conviction for second degree battery. The Defendant filed a written response claiming the predicate pleas were based on defective Boykins. A habitual offender hearing was held on January 15, 2003, at which time the State advised that it was proceeding only on the Defendant's prior conviction for second degree battery. After the hearing, the trial court found the Defendant to be a second felony offender as to each count and sentenced him, under La. R.S. 15:529.1, to eight and one-half years imprisonment at hard labor on each count, ordering that the sentences run concurrently.[1]

FACTS
Sometime between April 1 and 15, 2001, H.L.,[2] age 13, accompanied T.H., the Defendant's son, on a visit with the Defendant, who had recently been released from jail. At approximately 8:30 to 9:00 p.m., the Defendant and his girlfriend, Elaine Shaw (Shaw), picked up H.L. and T.H. from T.H.'s grandmother's house in Westwego. The Defendant stopped at several convenience stores and bought beer, wine coolers, cigars and cigarettes. The Defendant also stopped at a friend's house and picked up wrappers to roll marijuana before driving to Shaw's house in Laplace.
Once they arrived at Shaw's house, Shaw went to sleep and the Defendant and the two boys ate dinner and then smoked joints outside on the porch. Thereafter, T.H. went to sleep and H.L. stayed up with the Defendant. Approximately twenty minutes later, the Defendant told H.L. that some girls were coming over to "suck [H.L.'s] penis." According to H.L., the Defendant pretended to use the phone and acted like he called a girl. The Defendant told H.L. the girl lived five to ten minutes away and instructed H.L. to go upstairs to the loft and wait.
While H.L. was waiting in the loft, the Defendant came in and told him the girl did not want to be seen. The Defendant took H.L.'s shirt off, tied it around H.L.'s eyes, and told him the girl was coming. H.L. testified that the Defendant pulled H.L.'s shorts down and began performing oral sex on him. After about five to ten seconds, H.L. put his hand down and felt a bald spot and a little bit of hair. He removed his blindfold and saw the Defendant kneeling in front of him. H.L. told the Defendant that he did not feel good and was going to bed.
*752 H.L. went to the room where T.H. was sleeping and lay down. Approximately ten minutes later, the Defendant came into the room and tried to lay down with H.L. The Defendant told H.L. that the girl was coming again. H.L. stated that he did not want to do it anymore and asked for something to drink in order to get the Defendant out of the room. The next morning, Shaw drove H.L. and T.H. to school in Marrero.
Approximately one month later, on May 12, 2001, R.B., age 14, was going to spend the weekend with T.H. At approximately 9:00 p.m., the Defendant and T.H. picked up R.B. from his home in Marrero. On the way to the Defendant's residence at the Millet Motel in Laplace, the Defendant stopped at two convenience stores and bought beer. He then stopped and bought marijuana which the three of them smoked in the car on the way to Laplace. They stopped to eat at the Huddle House and then went to the motel where they watched television and smoked another joint.
There was only one bed in the motel room. The three lay on the bed, with R.B. lying between the Defendant and T.H., and went to sleep. Ten minutes later, R.B. felt the Defendant's hand rub up against him. R.B. initially thought it was an accident but it happened again. According to R.B., the Defendant unzipped R.B.'s pants and started massaging his penis through his boxers. R.B. excused himself to go to the bathroom. When R.B. returned from the bathroom, he told the Defendant he felt sick and then lay on the floor and went to sleep. R.B. stated he slept with his waist under the bed so the Defendant would not touch him again.
Neither H.L. nor R.B. reported the incidents immediately. R.B. testified that one week after the incident, he and H.L. were talking at which time the two discussed what the Defendant had done to each of them. H.L. and R.B. told T.H. about the incidents and T.H. reported it to his stepfather and mother who then reported it to the police.
Detective Terrell St. Martin investigated the incidents involving H.L. and R.B. He arrested the Defendant pursuant to an arrest warrant on May 21, 2001. Upon his arrest, the Defendant was advised of his Miranda[3] rights. The Defendant waived his rights and gave a recorded statement, which was played for the jury. In his recorded statement, the Defendant vacillated between admitting he touched R.B. "a couple of times" to stating he could not remember.[4] He never admitted performing oral sex on H.L. Following the convictions and sentences, the Defendant appealed and assigned three errors.

ASSIGNMENT OF ERROR NUMBER ONE
The Defendant contends that the trial court erred, warranting a reversal of his conviction, by denying his challenges for cause as to three jurors, Shirley Packer (Packer), Malinda Rein (Rein) and Tammy Mitchell[5] (Mitchell), which caused him to use his peremptory challenges on two of the jurors and to accept the third, Mitchell, because he had exhausted his peremptory challenges. He claims that prospective jurors Packer and Mitchell should have been excused for cause because they *753 both felt strongly that the Defendant should testify. The Defendant contends that both prospective jurors indicated they would weigh the fact that the Defendant did not testify in considering the evidence. The Defendant also challenged prospective juror Rein on the basis that she knew an assistant district attorney. The Defendant argues that, despite Rein's claims to the contrary, she would have been biased in her deliberations because of the relationship.
Prejudice is presumed when a challenge for cause is erroneously denied by the trial court and the defendant has exhausted his peremptory challenges. State v. Anthony, 98-406 (La.4/11/00), 776 So.2d 376, 391, cert. denied, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000). To prove there has been error warranting a reversal of conviction and sentence, the defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. State v. Robertson, 92-2660 (La.1/14/94), 630 So.2d 1278, 1281. Where the defendant does not exhaust his peremptory challenges, he must demonstrate that he was prejudiced by the ruling denying his challenge for cause. Id. at 1280; State v. Perrilloux, 95-677 (La.App. 5th Cir.1/30/96), 669 So.2d 7, 9.
The Defendant's argument herein is based on his contention that he exhausted all of his peremptory challenges. Since the Defendant was charged with indecent behavior with a juvenile, which is punishable by imprisonment with or without hard labor, he was entitled to six peremptory challenges. La. R.S. 14:81(C); La.C.Cr.P. art. 799. Further, La. C.Cr.P. art. 789(A) allows for additional challenges for alternate jurors, providing in pertinent part:
The regular peremptory challenges allowed by law shall not be used against the alternate jurors. The court shall determine how many additional peremptory challenges shall be allowed, and each the defendant shall have an equal number of such challenges. The state shall have as many peremptory challenges as the defense. The additional peremptory challenges may be used only against alternate jurors.
A review of the record shows that the Defendant only used five of his six peremptory challenges before the six regular jurors were selected.[6] His sixth peremptory challenge was used in the selection of the alternate juror. Thus, contrary to his argument, we find that the Defendant failed to exhaust his peremptory challenges. As a result, to establish reversible error, the Defendant must demonstrate that he was prejudiced by the trial court's denial of his challenges for cause.
In a similar case, State v. Perrilloux, 95-677 (La.App. 5th Cir.1/30/96), 669 So.2d 7, 8-9, the defendant had also only used five of his six peremptory challenges before the six regular jurors were selected. The defendant used his sixth peremptory challenge on an alternate juror. This Court found no reversible error because the defendant failed to show that he was prejudiced by the trial court's denial of his challenge for cause. This Court noted that the defendant "neither argued, nor proved that he was forced to accept a questionable juror because he had exhausted his peremptory challenges." Id. at 9.
Likewise, in the present case, the Defendant has failed to demonstrate error warranting a reversal of his convictions because he has not shown any prejudice suffered by the trial court's denial of his *754 challenges for cause. In the first jury panel, the Defendant challenged Packer and Mitchell for cause. The trial court denied the challenges. The Defendant then used one peremptory challenge to strike Packer. He did not use a peremptory challenge to strike Mitchell, but stated that she was acceptable.
By the time six jurors were selected, the Defendant still had one remaining peremptory challenge. The record shows that trial counsel was clearly aware of the number of peremptory challenges available to him toward the end of voir dire because the trial court kept an accurate count throughout voir dire. The Defendant did not exhaust those challenges. Mitchell was the only juror challenged in this assignment of error that served on the jury. The Defendant could have used his remaining peremptory challenge to strike Mitchell but did not do so. Thus, the Defendant has failed to show that he suffered any prejudice from the denial of his challenges for cause and, consequently, he has failed to show reversible error.[7] This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
The Defendant argues that the trial court erred in denying his motion to suppress his statement. He asserts he was not lucid or competent at the time he gave his statement because he took two Xanax pills during the interrogation and, therefore, his statement was not voluntary. The Defendant argues that the transcript of his statement shows that his answers were vague and that he did not understand the charges against him. He further contends that his statement demonstrates that he had no independent recollection of the incidents at issue.
Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the state must prove beyond a reasonable doubt that the defendant was first advised of his Miranda[8] rights and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement or promises. La. R.S. 15:451; State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16, 29, cert. denied, 522 U.S. 1150, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998); State v. Quest, 00-205 (La.App. 5th Cir.10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866.
A determination of voluntariness is made on a case-by-case basis, depending on the facts and circumstances of each situation. State v. Quest, supra at 780. The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. Id.
*755 Intoxication renders a confession involuntary when the intoxication is of such a degree as to negate the defendant's comprehension and to make him unconscious of the consequences of what he is saying. State v. Quest, supra at 780, quoting State v. Narcisse, 426 So.2d 118, 125 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983). Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact and a trial judge's conclusions on this issue will not be disturbed unless unsupported by the evidence. Id.
On the second day of trial, a hearing was held outside of the presence of the jury on the admissibility of the Defendant's statement. The State presented the testimony of Detective Terrell St. Martin, who testified that he advised the Defendant of his rights prior to taking his statement. He explained that he read the advice of rights form to the Defendant and that the Defendant initialed each right and signed the form indicating that he understood his rights and wished to waive them. Detective St. Martin stated that the Defendant appeared alert and coherent during the interview. He noted that the Defendant's responses were appropriate to the questions and that he had no reason to think that the Defendant was intoxicated or under the influence of drugs at the time of the interview.
The Defendant also testified at the hearing. The Defendant stated that he was not advised of his rights until after he gave the statement. This fact was contradicted on cross-examination by the playing of the audio tape of the statement which demonstrated that the Defendant was advised of his rights before he gave a statement. The Defendant also testified that he took two Xanax pills in front of Detective St. Martin before giving the statement. He explained that his normal dose is one pill. The Defendant did not testify what adverse effect Xanax had on him other than to state that it calmed him down. The Defendant further agreed that he was not promised anything for his statement.
At the conclusion of the hearing, defense counsel argued that the Defendant's statement was inadmissible because the Defendant was under the influence of medication at the time of the statement which affected his mindset. The trial court ruled that the statement was admissible.[9]
In State v. Quest, 00-205 (La.App. 5th Cir.10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La. 11/2/01), 800 So.2d 866, this Court found no error in the trial court's denial of the defendant's motion to suppress despite the defendant's claim that he was under the influence of heroin at the time of the statement. This Court noted that the officer who took the defendant's statement testified that the defendant showed no signs of being on drugs or of being intoxicated. The officer stated that the defendant's speech and ability to balance were normal and that the defendant appeared coherent. This Court further noted that, even if the defendant had been under the influence of drugs, his alleged intoxicated state was not sufficient to vitiate the voluntariness of his statement.
Also, in State v. Delaune, 572 So.2d 652 (La.App. 5th Cir.1990), this Court held that the defendant's confession was free and voluntary even though it was made while the defendant was intoxicated. This Court gave great deference to the trial court's decision to deny the motion to suppress *756 the defendant's statement on the basis that it was free and voluntary. This Court noted that the trial court's decision was supported by the evidence (testimony) that the defendant appeared coherent and did not appear intoxicated.
Although the trial court here did not specifically comment on the Defendant's claim of intoxication when ruling on the motion to suppress, we find that the record supports its ruling. Detective St. Martin testified that the Defendant did not appear intoxicated. The statement itself does not evidence incoherence. At trial, Detective St. Martin specifically testified that he did not see the Defendant take any type of medication while in the interview room.[10] While the Defendant stated to the contrary that he did take a double dose of Xanax in the presence of Detective St. Martin, he did not testify that the medication impaired his ability to understand his rights. In fact, the Defendant never claimed that he did not understand his rights. He testified only that his rights were read to him afterwards, a claim that was clearly disproved by the taped statement itself. The Defendant admitted that no promises were made in exchange for his statement.
Based on the foregoing, we find that the Defendant has not shown, contrary to the testimony of Detective St. Martin, that his statement was not free and voluntary. The record supports the trial court finding that the statement was admissible. Therefore, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error, the Defendant argues that imposition of an eight and one-half year sentence on each of the two counts was excessive. He argues that there was no reason for the harsh sentences because there was no "excessive trauma, cruelty or permanent suffering" endured by the victims. He further argues that the victims were unbelievable. The Defendant also contends that the trial court erroneously imposed an enhanced sentence on both counts.
It is first noted that the Defendant did not object to his sentences and failed to file a motion to reconsider his sentences pursuant to La.C.Cr.P. art. 881.1. Therefore, his sentences will only be reviewed for constitutional excessiveness. State v. Marshall, 02-747 (La.App. 5th Cir.2/11/03), 841 So.2d 866, 872, writ denied, 03-659 (La.6/6/03), 845 So.2d 1090.
Both the United States and the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. of 1974, art. I, § 20. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La.App. 5th Cir.4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. Trial judges are granted great discretion in imposing sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion. State v. Bacuzzi, 97-573 (La.App. 5th Cir.1/27/98), 708 So.2d 1065, 1068-1069.
In reviewing a sentence for excessiveness, this Court must consider the punishment and the crime in light of the *757 harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. State v. Brown, 99-172 (La. App. 5th Cir.9/28/99), 742 So.2d 1051, 1056, writ denied, 99-3148 (La.4/20/00), 760 So.2d 340. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Watts, 99-311 (La.App. 5th Cir.8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. Id.
The Defendant was convicted of two counts of indecent behavior with a juvenile. As a second felony offender, the Defendant faced an enhanced sentencing range between three and one-half and fourteen years. La. R.S. 14:81 and 15:529.1(A)(1)(a). The Defendant was sentenced to eight and one-half years on each count, to run concurrently, which is in the middle of the range. In imposing sentence, the trial court noted it had considered the pre-sentence investigation report (PSI),[11] letters in support of the Defendant, and letters not in support of the Defendant.
The record indicates that the Defendant, age 40, preyed upon two of his son's friends, who were only 13 and 14 years old, while they were away from home under his supervision. The Defendant gave the boys alcoholic beverages and marijuana before taking advantage of them. In one case, the Defendant waited until the victim was asleep before touching him. In the other case, the Defendant used trickery and deceit to perform oral sex on the victim. In performing oral sex on one of his victims, the Defendant could have faced a more serious charge than indecent behavior with a juvenile. The evidence also showed that the Defendant had only recently been released from jail prior to committing these offenses, further demonstrating his propensity for recurring criminal behavior. Additionally, the Defendant was found to be a second felony offender with a predicate conviction of second degree battery for beating his wife. Based on these facts, we do not find that the imposition of eight and one half year concurrent sentences, which fall in the middle of the enhanced sentencing range for a second offender, are excessive.
Further, there is no merit in the Defendant's claim that the trial court erroneously imposed enhanced sentences on both counts. It is well settled that a defendant, convicted on the same day of separate felonies arising out of separate criminal offenses committed at separate times, is subject to being adjudicated a habitual offender on each conviction. State ex rel. Porter v. Butler, 573 So.2d 1106, 1109 (La.1991); State v. Page, 02-689 (La.App. 5th Cir.1/28/03), 837 So.2d 165, 177.
The State filed a habitual offender bill of information seeking to enhance both of the Defendant's 2002 convictions for indecent behavior with a juvenile. The two counts with which the Defendant was charged in the single bill of information were two separate incidents involving two separate victims that occurred on two separate dates. Thus, under State ex rel. Porter, both of the counts were subject to enhancement. This assignment of error lacks merit.

*758 ERROR PATENT REVIEW

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). The review reveals the following.
The transcript reflects that the trial judge informed the Defendant that he had "two years to file for post-conviction relief," without informing him of the commencement of the time period. Thus, we find that the Defendant was not properly informed under La.C.Cr.P. art. 930.8. We remand the case for the district court to inform the Defendant of the provisions of Article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of the Court's opinion and to file written proof of receipt of such notice in the record. State v. Stelly, 98-578, p. 6 (La.App. 5th Cir.12/16/98), 725 So.2d 562, 564.
We also find that because the Defendant was convicted under La. R.S. 14:81, a "sex offense" as defined by La. R.S. 15:542(E), notification of the sex offender registration requirements is mandated. La. R.S. 15:540 et seq. However, the record does not indicate that the trial judge provided the Defendant with notification of the registration requirements of La. R.S. 15:542 as required by La. R.S. 15:543(A). Therefore, on remand, the trial court is ordered to inform the Defendant of the registration requirements of La. R.S. 15:542 by sending appropriate written notice to the Defendant within ten days of this opinion, and to file written proof in the record that the Defendant received such notice. State v. Stevenson, 00-1296 (La.App. 5th Cir.1/30/01), 778 So.2d 1165, 1166-1167.
Accordingly, for the foregoing reasons, the convictions of the Defendant on two counts of indecent behavior with a juvenile and his enhanced sentences, as a second felony offender, to eight and one half years imprisonment at hard labor, with the sentences to run concurrently, are affirmed. The case is remanded to the district court to provide proof in the record of the Defendant's receipt of appropriate notice, under La.C.Cr.P. art. 930.8, of the prescriptive period for post-conviction relief and, under La. R.S. 15:542, of the sex offender registration requirements.
CONVICTIONS AFFIRMED; ENHANCED SENTENCES AFFIRMED; REMANDED.
NOTES
[1] No original sentence was imposed on either count.
[2] The victim's initials are used under the authority of La. R.S. 46:1844(W)(3) which allows the Court to identify by his initials a crime victim, who is a minor.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] A transcript of the Defendant's statement is included in the actual record as opposed to being included as an exhibit.
[5] Mitchell was referred to both as Tammy Mitchell and Connie Mitchell in the record.
[6] The Defendant used his five peremptory challenges on Packer, Gail Bratcher, Deborah Jeffcoat, Linda Kugler, and Claudette LeBlanc.
[7] See, State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250, 254, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996), where the Supreme Court found it did not need to reach whether there was an erroneous denial of a challenge for cause because the defendant had peremptory challenges remaining at the close of jury selection; and State v. Koon, 96-1208 (La.5/20/97), 704 So.2d 756, 767 (on original hearing), cert. denied, 522 U.S. 1001, 118 S.Ct. 570, 139 L.Ed.2d 410 (1997), where the Supreme Court determined it did not need to decide whether a challenge for cause was improperly denied because the defense failed to exhaust its peremptory challenges. However, we note that the record indicates that the jurors were rehabilitated.
[8] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[9] There was subsequent argument about the statement containing other crimes evidence. The trial court ultimately ruled that portion of the Defendant's statement that referenced "molestation" was to be excised.
[10] In determining whether the trial court's ruling on a defendant's motion to suppress is correct, the appellate court may consider evidence adduced at both the suppression hearing and at trial. State v. Nelson, 02-65 (La. App. 5th Cir.6/26/02), 822 So.2d 796, 799, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627.
[11] The PSI is not contained in the record.