648 So.2d 962 (1994)
STATE of Louisiana
v.
Lalandie FRANKLIN.
No. 94-KA-409.
Court of Appeal of Louisiana, Fifth Circuit.
December 14, 1994.
*964 John M. Mamoulides, Terry M. Boudreaux, Dist. Atty's. Office, Parish of Jefferson, Gretna, for plaintiff, appellee State of La.
Laurie A. White, Angela A. Gerrets, New Orleans, for defendant, appellant, Lalandie Franklin.
Before DUFRESNE, GOTHARD and BOUTALL, J. Pro Tem.
JOHN C. BOUTALL, Judge Pro Tem.
The defendant, Lalandie Franklin, was charged with armed robbery in violation of La.R.S. 14:64. After he was evaluated by a sanity commission and found competent to stand trial, he entered a plea of not guilty and not guilty by reason of insanity. Defendant proceeded to trial and was found guilty as charged. The trial court sentenced defendant to ninety-nine years at hard labor without benefit of probation, parole or suspension of sentence. Defendant filed a motion to reconsider sentence, which was granted by the trial court; the original sentence was vacated and the defendant was resentenced to a term of ten years. Subsequently, the state filed a multiple offender bill pursuant to La.R.S. 15:529.1. After a hearing on the multiple bill, the trial court adjudicated defendant a third offender. The trial court then vacated the ten year sentence and resentenced the defendant to ninety-nine years at hard labor without benefit of probation, parole or suspension of sentence.
The defendant now appeals from his conviction and sentence. We affirm.

FACTS
In the early morning hours of August 13, 1992, Gwendolyn Alexander went after work to the Shell service station at Ames Boulevard and the Westbank Expressway, where she had arranged to meet her friend, Mary Marie Woodruff. The two bought some snack food at the Shell station and proceeded on foot down Ames Boulevard toward the apartment complex where Ms. Woodruff lived. As they approached Lincoln Middle School, Ms. Alexander and Ms. Woodruff noticed defendant walking behind them. After some time, defendant walked past them and then moved aside to allow them to walk ahead of him again.
Finally, defendant approached Ms. Alexander on her right side and held a butcher knife to her face. He told her to "give it up or take this." Defendant took Ms. Alexander's purse and ran to the other side of the street where he stopped to rummage *965 through the purse. He then fled the area on foot.
Ms. Woodruff and Ms. Alexander flagged down a passing van, told its occupants about the robbery and asked them to follow defendant. The "guys" in the van complied. The two women then went to Ms. Woodruff's apartment nearby and telephoned the police. While the women were reporting the incident to police, some unknown individuals arrived at the apartment and reported that the occupants of the van had apprehended the suspected robber. Ms. Alexander and Ms. Woodruff went to investigate, and found defendant lying on his back in a nearby courtyard. He appeared to have been beaten. When police arrived on the scene, both Ms. Alexander and Ms. Woodruff identified defendant as the man who had robbed Ms. Alexander, and he was placed under arrest. Ms. Alexander's purse and its contents and the knife allegedly used in the robbery were apparently not recovered, and were not introduced as evidence at trial. Both women identified defendant at trial as the man who had robbed Ms. Alexander.
On appeal, defendant assigns as error the following:
1. The evidence presented was insufficient to support a finding of guilty as charged to armed robbery.
2. Appellant was denied effective assistance of counsel at trial as guaranteed by the Sixth Amendment of the United States Constitution. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. [2052] 1052(sic), 80 L.Ed.2d 674 (1984.)
3. The trial court erroneously sentenced appellant to an excessive term without enumerating his reasons or considerations for sentence although extenuating circumstances existed.
4. The appellant was improperly found to be a habitual offender in violation of Louisiana Revised Statute 15:529.1 et seq.

SUFFICIENCY OF EVIDENCE
By this assignment, defendant complains that the findings of the court-appointed psychiatrist concerning defendant's sanity were contradictory and that the trial court did not lend sufficient weight to the testimony of defense expert, who defendant contends was more knowledgeable about the case. Defendant further argues that the absence of evidence regarding his actions immediately following the offense prevented the sanity commission from formulating an informed finding.
The state bears the burden in any prosecution of proving beyond a reasonable doubt each element of the offense necessary to constitute defendant's guilt. La.R.S. 15:271; State v. Bibb, 626 So.2d 913 (La.App. 5 Cir.1993), rehearing denied. In Louisiana, however, a defendant is presumed sane at the time of the offense; the state is not required to prove sanity. La.R.S. 15:432; State v. Weber, 364 So.2d 952, 956 (La.1978); State v. Bibb, 626 So.2d at 933. In order to rebut this presumption, the defendant must put forth an affirmative defense of insanity and prove his insanity by a preponderance of the evidence. La.C.Cr.P. art. 652; State v. Bibb, supra; State v. Jackson, 548 So.2d 29 (La.App. 5 Cir.1989). Legal insanity is defined in La.R.S. 14:14, which provides:
If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.
The question of whether or not defendant has proven his insanity is one for the trier of fact. State v. Bibb, 626 So.2d at 934. When a defendant who affirmatively offered an insanity defense claims that the evidence at trial does not support a finding of guilt beyond a reasonable doubt, the standard for review by an appellate court is whether or not any rational factfinder, viewing the evidence in the light most favorable to the prosecution, could conclude that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense. State v. Claibon, 395 So.2d 770, 772 (La.1981); State v. Bibb, 626 So.2d at 934; State v. Jackson, 548 So.2d at 30.
In considering this question, we may properly look to expert and lay testimony and to defendant's actions. State v. Bibb, 626 So.2d *966 at 934; State v. Jackson, 548 So.2d at 31. Factors pertinent to the review of expert testimony, as set forth by this Court, include:
... whether lay testimony controverting the expert opinion was offered (State v. Claibon, 395 So.2d at 774), whether the experts specifically concluded that the defendant could not discern between right and wrong at the time of the crime (State v. Noble, 425 So.2d 734, 737 (La.1983); State v. Claibon, 395 So.2d at 774), to what extent the expert testimony was premised on the self-serving revelations of the defendant (State v. Parker, 416 So.2d 545, 551 (La.1982)), to what extent the expert analysis is controverted by other expert analysis (State v. Heath, 447 So.2d 570, 576 (La.App. 1st Cir.), writ denied, 448 So.2d 1302 (La.1984)), the duration of the expert's contact with the defendant and whether he had interviewed the defendant previous to the offense (State v. Guidry, 450 So.2d 50, 52 (La.App. 3d Cir.1984), writ denied, 476 So.2d 344 (La.1985), the chronological proximity of the expert examination to the offense, and whether the experts were treating physicians. State v. Nealy, 450 So.2d 634, 639 (La.1984). Insofar as defendant's actions, such factors as whether the defendant fled, disposed of evidence, and deliberately planned and executed the offense are pertinent. State v. Pravata, 522 So.2d [606] at 613-614 [(La.App. 1 Cir.1988)].

State v. Bibb, 626 So.2d at 934.
The trial court in this case heard testimony from two experts in the field of psychiatry, Dr. Lincoln Paine and Dr. Genevieve Arneson. Dr. Paine, defendant's expert witness, saw the defendant once some seven months after the commission of the offense. He testified that in evaluating the defendant he had reviewed the police report, defendant's medical records from the West Jefferson Mental Health Center, Dr. Arneson's report, and a 1986 judgment from Orleans Criminal District Court Judge Miriam Waltzer finding defendant not guilty by reason of insanity. The doctor also interviewed defendant's parents. The doctor determined that defendant was diagnosed in 1985 as schizophrenic and that defendant continued to suffer from this illness. Records indicated that defendant was placed on psychotropic drugs and was last seen at the West Jefferson Mental Health Center staff on July 15, 1992, approximately one month prior to the armed robbery.
Dr. Paine testified that defendant's symptoms included a loss of touch with reality and hearing voices. His medical history indicated that he did well while on the prescribed medications, but when not on the medicine he tended to suffer from delusions and hallucinations. Dr. Paine opined that schizophrenics are not able to tell the difference between right and wrong during these types of episodes.
Upon defendant's July 15 visit to West Jefferson Mental Health Center, it was noted that he had neglected his personal hygiene and that he seemed to be having some difficulty with voices. Dr. Paine testified that, based on defendant's medical history, a failure to take his medication between the July 15 office visit and the August 13 robbery would have caused a return of psychotic events such as feelings of persecution and hearing voices. The doctor further testified that victims of schizophrenia might appear outwardly normal even when suffering psychotic symptoms. In Doctor Paine's opinion, it was more likely than not that defendant did not know right from wrong at the time of the offense.
Dr. Arneson was appointed by the court to the sanity commission to determine defendant's competency to stand trial. She saw the defendant once about three months after the commission of the offense. In her written report to the court, she noted that defendant told her he had been off his medication for two months prior to the robbery, and did not recall the incident. The doctor's opinion at that time, as written in the report, was that "[i]f the story he tells is correct, it is probable that he was neither sane nor competent at the time of the alleged offense." However, Dr. Arneson testified at trial that she believed that defendant knew right from wrong at the time of the armed robbery. She based her revised opinion primarily on the report that defendant left the scene immediately after committing the crime, an element *967 she said she was not aware of before compiling her initial report. Dr. Arneson testified that one who is legally insane typically lingers at the scene of the crime because he suffers from the delusion that he is justified in his behavior. Dr. Arneson further stated that, even when not taking the prescribed medication, a schizophrenic may have lucid intervals.
Defendant's mother and stepfather, with whom he lived at the time of the robbery, both testified at trial. Both were aware of defendant's mental illness and actively supervised his treatment. Jessie Lewis, Sr. testified that during the month prior to the robbery, his stepson frequently exhibited strange behavior, such as talking to himself. When someone tried to talk to defendant, he would just sit and stare. Mr. Lewis believed that during that time defendant was not taking his medication.
Alice Lewis testified that either she or her husband took defendant to the mental health clinic on a monthly basis for treatment. During the week prior to the robbery, she noticed that defendant was acting strange and she knew he was not taking his medication.
Ms. Alexander and Ms. Woodruff were the only witnesses to actually observe defendant's behavior at the time of the offense. Their testimony is devoid of any references to psychotic behavior on the part of defendant (i.e., hearing voices or appearing disoriented).
We reiterate at this time that the question of whether defendant was insane at the time of the offense is one for the trier of fact. It is well settled that the factual determinations of the trial judge are entitled to great weight on appellate review. State v. Garriga, 592 So.2d 453 (La.App. 5 Cir.1991), writ denied, 596 So.2d 553 (La.1992). Furthermore, this court has held that it is not the function of the appellate court to evaluate the credibility of witnesses or to overturn factual determinations. State v. Lee, 600 So.2d 796 (La.App. 5 Cir.1992); State v. Gilmore, 522 So.2d 658 (La.App. 5 Cir.1988).
In this case, the trial court considered the testimony of Dr. Arneson and the testimony of the two eye witnesses as to defendant's behavior at the scene of the crime, and concluded that defendant was sane at the time of the commission of the offense.
We therefore find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the defendant herein had not proved by a preponderance of the evidence that he was insane at the time of the offense.

INEFFECTIVE ASSISTANCE OF COUNSEL[1]
By this assignment, defendant contends that trial counsel was ineffective in that he failed to pursue answers from the state or hearings on pre-trial motions, failed to object to critical hearsay testimony and failed to challenge Dr. Arneson's determination that defendant was sane at the time of the offense because he fled the scene of the crime. Defendant further complains that his case was prejudiced by counsel's failure to call as witnesses the men in the van who allegedly apprehended defendant after the robbery and brought him to the courtyard where he was arrested.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment of the United States Constitution and Article I, Section 13 of the Louisiana Constitution. When a defendant seeks reversal of a conviction based on ineffective assistance of counsel he must satisfy both parts of the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), rehearing denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 *968 (1984). First, defendant must show that counsel "committed errors so serious that he or she was not functioning as the `counsel' guaranteed a defendant by the Sixth Amendment." Strickland, supra at 466 U.S. at 687, 104 S.Ct. at 2064. The key question must be whether counsel's performance was reasonable considering all the circumstances.
Secondly, the defendant must show that the deficiency was so great as to prejudice the defense. This requires a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, one with a reliable result." Id. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983).
We have considered the record carefully and find that, viewed under the two-pronged Strickland test, the defense provided by defendant's trial counsel appears to have been effective. Counsel called and provided thorough examination of witnesses in support of defendant's insanity claim. He introduced physical evidence on defendant's behalf, and diligently cross-examined state's witnesses.
Defendant's complaints of his trial counsel's performance do not amount to ineffective assistance. While the record does not show that defendant's pretrial motions for discovery and to suppress were heard by the trial court, there was no need for the court to rule on defendant's motions to suppress, since there was ultimately no confession introduced at trial and no evidence was introduced which might have been the subject of a motion to suppress.
Likewise, defendant's complaints that his attorney should have used a copy of the initial police report to impeach Ms. Woodruff's testimony. Dr. Arneson's conclusions are also specious. The testimony that defendant fled the scene after the commission of the crime was undisputed and the issue of how defendant eventually got to the courtyard where he was arrested does not appear to have entered into Dr. Arneson's decision.
Finally, counsel's failure to call as witnesses the men in the van alleged to have beaten defendant and brought him to the courtyard of Ms. Woodruff's apartment complex, as well as his failure to object to hearsay testimony regarding these men can be considered as part of counsel's trial strategy. As the court in Strickland noted 466 U.S. at 688, 104 S.Ct. at 2065:
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy" ... (Citations omitted.) See also State v. Copeland, 631 So.2d 1213, 1222 (La.App. 5th Cir.1994), in which this Court found that counsel's decisions regarding the interviewing and examination of witnesses were matters of trial strategy and thus did not constitute ineffective assistance of counsel.
Accordingly, we find no merit to defendant's claim of ineffective assistance of counsel.

EXCESSIVE SENTENCE
Defendant here claims that the trial judge erred in failing to comply with the Louisiana Sentencing Guidelines in passing sentence, and in so doing imposed a sentence that was unconstitutionally excessive.
The record reflects that on October 15, 1993, defendant filed a motion to reconsider sentence in the trial court, objecting therein to his original sentence of ninety-nine (99) years. This motion was granted, and defendant was resentenced on November 24, 1993 to serve ten (10) years. On the same day the trial court found defendant to be a multiple offender, and again sentenced him to serve ninety-nine (99) years. Defendant, however, did not file a motion to reconsider sentence with respect to the third and final sentence of ninety-nine (99) years.
*969 La.C.Cr.P. art. 881.1 provides that the state or defendant may file a motion to reconsider sentence within thirty days following the imposition of sentence or within such longer period that the court may set at sentencing. Under section D of the article,
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
Because defendant failed to file a motion to reconsider with respect to the sentence imposed on November 24, 1993, he is precluded under article 881.1 from claiming excessiveness on appeal. State v. Hutson, 613 So.2d 1134 (La.App. 5 Cir.1993).

ADJUDICATION AS A HABITUAL OFFENDER
The state alleged two predicate offenses in defendant's multiple offender bill. Defendant contends that the state did not produce sufficient evidence to prove that the predicate offenses alleged in the multiple offender bill of information fell within the five year "cleansing" period set forth in La.R.S. 15:529.1.[2]
To prove that defendant is an habitual offender, the state must establish, by competent evidence, the prior felony convictions and that the defendant is the same person who was convicted of the prior felonies. State v. Metoyer, 612 So.2d 755 (La. App. 5 Cir.1992); State v. Chaney, 423 So.2d 1092 (La.1982). The state bears the additional burden of showing that the predicate convictions fall within the five year cleansing period. Evidence of the date of discharge for the prior sentence is therefore an essential element to the habitual offender case. State v. Metoyer, 612 So.2d at 758.
The multiple offender statute sets forth as follows the documentary evidence needed to establish the time elapsed between the expiration of sentence on the predicate offense and the current conviction:
The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the state of Louisiana, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate. LA-R.S. 15:529.1(F).
The defendant's first predicate offense was under Twenty-Fourth Judicial District Court number 78-0031. Defendant was alleged to have pled guilty in that case to one count of forcible rape, La.R.S. 14:42.1, and one count of simple robbery, La.R.S. 14:65 on March 29, 1978. Defendant was sentenced to serve ten years in that matter. The second predicate conviction alleged was in Twenty-Fourth Judicial District case number 87-3911. In that case the state alleged that defendant pled guilty to one count of simple burglary, La.R.S. 14:62 on September 14, 1988. Defendant was sentenced in that matter to serve three years.
*970 At the multiple bill hearing in this matter, the state produced sufficient evidence to prove that both predicate convictions alleged in the multiple bill fell within the five year cleansing period provided by La.R.S. 15:529.1. The state introduced the district court minute entries, as well as the penitentiary packs, which verify defendant's sentencing dates and dates of release. Defendant was released from custody on the 1978 conviction on October 16, 1984. He committed the second predicate offense of simple burglary on August 19, 1987, well within the five year period. Defendant was released from custody on the burglary conviction on March 25, 1990 and committed the instant offense of armed robbery on August 13, 1992, again within the five year period. Expert testimony by Ms. Adams, an expert in fingerprint analysis, sufficiently proved that defendant was the same individual convicted of the predicate offenses alleged in the multiple bill.
We therefore hold that the trial court did not err finding that defendant was a third offender.

ERROR PATENT
Finally, we note that we have conducted a review of the record for errors patent on its face and find none which warrant reversal of the conviction or sentence.
However, we do note the following error. La.C.Cr.P. art. 930.8 dictates that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post conviction relief. In this case, neither the transcript of defendant's original sentencing of October 15, 1993, nor the resentencing on the multiple bill on November 24, 1993 reflect that the defendant was so informed. This defect has no bearing on whether the conviction is proper and thus is not grounds to reverse the sentence or to remand the case for resentencing. La.C.Cr.P. art 921; State v. Corley, 617 So.2d 1292 (La.App. 3 Cir.1993). To satisfy the notice requirements, the district court is directed to inform defendant of the provisions of article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof in the record that the defendant received the notice. State v. Corley, supra; State v. Daniels, 609 So.2d 1047 (La.App. 2 Cir.1992).
For the above discussed reasons the conviction and sentence of the defendant are affirmed. The district court is instructed to give the defendant the notice required by La.C.Cr.P. art. 930.8.
AFFIRMED WITH INSTRUCTION.
NOTES
[1] The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through post-conviction relief rather than direct appeal, so as to afford the parties an evidentiary hearing before the trial court and create an adequate record for review. State v. Truitt, 500 So.2d 355 (La.1987); State v. Brown, 384 So.2d 983 (La.1980). It is well settled, however, that where the record contains sufficient evidence to decide the issue and the issue is properly raised by the assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780 (La.1993); State v. Junior, 542 So.2d 23 (La.App. 5 Cir.1989), writ denied, 546 So.2d 1212 (La.1989).
[2] LA-R.S. 15:529.1(C) establishes the five-year cleansing period as follows:

This section shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said five years.