836 So.2d 625 (2002)
STATE of Louisiana
v.
Castadel RUFFIN.
No. 02-KA-798.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2002.
*627 Paul Connick, Jr., District Attorney, Terry Boudreaux, Assistant District Attorney, Gretna Courthouse, Gretna, LA, for Appellee.
Bruce G. Whittaker, New Orleans, LA, Castadel Ruffin, pro se, Angola, LA, for Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Defendant, Castadel Ruffin, appeals his conviction and sentence for distribution of cocaine within 1000 feet of St. Christopher Elementary School, a violation of LSA-R.S. 40:981.3. We affirm.
*628 The incident was alleged in the bill of information to have occurred on or about August 21, 2000.
Following a plea of not guilty, Ruffin filed numerous pre-trial motions, including a motion to suppress confession, evidence, and identification. Although the Motion to Suppress Identification was denied after closing arguments and prior to the guilty verdict, there was no ruling on the Motion to Suppress Evidence and/or Confession. On May 10, 2001, Ruffin waived a jury trial, and the case was tried before the judge who found him guilty as charged. On May 30, 2001, the trial court sentenced Ruffin to imprisonment at hard labor for 20 years. The trial court also recommended the Blue Walters drug treatment program during the period of Ruffin's incarceration.
The state filed a multiple offender bill of information alleging Ruffin to be a third felony offender. Ruffin denied the allegations of the multiple bill, and following hearing, the trial court found him to be a second felony offender. The court vacated the original sentence, and sentenced Ruffin under LSA-R.S. 15:529.1 to imprisonment at hard labor for 60 years. Ruffin filed a Motion to Reconsider Sentence on April 8, 2002, and on that same date, he also filed a Motion for Appeal that was granted. Again, there was no ruling on the Motion to Reconsider Sentence.
Megan Carter (the pseudonym of an undercover officer), testified that she was employed by the Jefferson Parish Sheriff's Office, and that she conducted an investigation into illegal drug trafficking on Manson Street in Metairie in Jefferson Parish. On August 21, 2000, Officer Carter met a white female in the Auto Zone parking lot at the corner of Airline Drive and Manson Street. They had a conversation regarding the purchase of "two twenties" of crack cocaine. The female told Officer Carter to meet her in the La Village Hotel parking lot. The female left but returned with a black male, later identified as Ruffin. After the female told Ruffin what Officer Carter wanted, Ruffin gave Officer Carter cocaine. Officer Carter gave Ruffin forty dollars, and she gave the female two dollars.
Officer Carter testified that the location of the drug transaction was approximately one block away from St. Christopher's School and Church. Officer Carter had video and audio equipment in her vehicle to monitor the transaction. She identified State's Exhibit 1 as a videotape of the transaction, which videotape was played for the judge. Still photographs taken from that videotape were also identified and admitted into evidence. Officer Carter testified that Ruffin's eye was disfigured. She further identified State's Exhibit 3 as the two rocks of crack cocaine she purchased from Ruffin, testifying that she did not know Ruffin's name when she purchased the drugs from him. She gave a description of Ruffin to Officer Robert Gerdes the night of the purchase. Officer Billy Matranga subsequently presented Officer Carter with a photographic lineup, State's Exhibit 4. Officer Matranga did not tell her whom to pick out in the lineup. Officer Carter recognized photograph number 3, Ruffin, as the man who sold drugs to her, and identified State's Exhibit 5 as a photograph of the area where the drug transaction occurred.
Officer Robert Gerdes, who was called as a witness by the state, testified that he became involved in a narcotics investigation in August of 2000. He testified that, on August 21, 2000, he spoke with Officer Carter, who informed him that she had made a crack cocaine purchase from a black male at the La Village Motel which was located at 100 Manson Avenue off of Airline Drive in Metairie. Officer Carter *629 provided Officer Gerdes with a physical description of the individual: a black male, 5'9" or 5'10", medium build and that he appeared to be blind or scarred in the right eye. Based on that description, Officer Gerdes and some other officers proceeded to the La Village Motel in an attempt to find the individual who sold drugs to Officer Carter.
When they pulled into the motel parking lot, Officer Gerdes observed the black male that Officer Carter had described. Officer Gerdes and the other officers detained the black male, later identified as Ruffin, for identification purposes. Officer Gerdes completed a standard Jefferson Parish Sheriff's Office field interview card, marked as State's Exhibit 6. The card listed Ruffin's name, date of birth and physical description. On the back of the card, Officer Gerdes noted that Ruffin was blind in his right eye, and that he had a small tattoo of an "R" on his right hand. Officer Gerdes gave Officer Billy Matranga the field interview card and informed him that he and Sergeant Bruce Harrison had arrested Ruffin that night for an outstanding attachment.
Billy Matranga, who was called as a witness by the state, testified that he was employed by the Jefferson Parish Sheriff's Office in the narcotics division. Officer Matranga testified that he had received information regarding a suspect's description from Officer Gerdes. Based on this description, Officer Matranga compiled a photographic lineup using a photograph of Ruffin on August 23, 2000. He identified State's Exhibit 4 as the photographic lineup he compiled. Officer Matranga showed the lineup to Officer Carter on August 23, 2000, and she was able to positively identify Ruffin, photograph number 3, as the individual who sold her drugs. Officer Matranga testified he did not offer her anything to pick Ruffin, nor did he suggest to her in any way that she should pick him. Officer Matranga was on the scene during the drug transaction, and although he did not witness it, he heard it on a transmitter.
The state and Ruffin agreed to the following stipulation: that if the state called Charles Kron, a forensic scientist, he would be accepted as an expert in the field of forensic chemistry; that Mr. Kron received two pieces of off-white objects at the crime lab on August 23, 2000 in connection with this case; that he analyzed the two objects; and that the two objects were found to contain cocaine.
Sergeant Joe Williams, who was called as a witness by the state, testified that he took measurements in connection with this case, and that the distance between the property line of St. Christopher's School and the property line of the La Village Motel was 98.3 feet. He identified State's Exhibit 5 as a photograph of the area where he took the measurements. Sergeant Williams explained that he positioned police cars to assist him in taking the measurements. Agent Fleming's car was next to the property line of St. Christopher's School, and his car was next to the property line of the La Village Motel. Sergeant Williams testified that, in looking at State's Exhibit 5, it appeared to him that the distance from the place where the drug transaction occurred to his car was the same as the distance from his car to Agent Fleming's car. He did not measure the distance between the property line of St. Christopher's School and the actual location of the drug transaction.
Bert Carlisle, who was called as a witness by the state, testified that he was the assistant principal at St. Christopher's School. Using State's Exhibit 5, he identified the building which housed children in kindergarten through eighth grade, the church, and the pre-school for three and four-year-old children. Mr. Carlisle also *630 identified a playground for the three and four-year-old children located next to Manson Street and across the street from the La Village Motel. He testified that the school was in operation on August 21, 2000, that St. Christopher was a drug free zone, and that there were signs posted around the school stating that St. Christopher was a drug free zone.
The defense did not call any witnesses.
Ruffin has raised issues on appeal regarding sufficiency of the evidence, erroneous admission of evidence, excessive sentence, and failure to knowingly and intelligently waive his right to a jury trial. Ruffin argues that trial counsel was ineffective for failing to timely file a Motion for Post Verdict Judgment of Acquittal because the evidence was insufficient to support a conviction. Specifically, he contends the state failed to prove that he knowingly or intentionally distributed cocaine. He further argues that the state failed to prove that he knew the two rocks sold to Officer Carter contained cocaine or that he sold the two rocks with the intent to sell cocaine. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, such as the erroneous admission of evidence, the reviewing court should first determine the sufficiency of the evidence by considering all of the evidence, including evidence the trial court may have erroneously admitted.[1]
The record does not indicate that defendant filed a Motion For Post Verdict Judgment. However, this failure does not preclude appellate review of the sufficiency of the evidence.[2] If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. However, if the appellate court finds that the totality of the evidence was sufficient to support the defendant's conviction, it must then determine whether the trial court erred in admitting the questioned evidence and, if so, whether the trial court's error requires a reversal of the conviction or was harmless.[3]
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. In applying this standard, the reviewing court will not assess credibility or re-weigh the evidence.[4] The trier of fact shall evaluate credibility and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness.[5] In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding.[6]
*631 Ruffin was charged with and convicted of distribution of cocaine within 1000 feet of a school in violation of LSA-R.S. 40:981.3 which provides in pertinent part:
Sec. 981.3. Violation of Uniform Controlled Dangerous Substances Law
A. (1) Any person who violates a felony provision of R.S. 40:966 through 970 of the Uniform Controlled Dangerous Substances Law while on any property used for school purposes by any school, within one thousand feet of any such property, or while on a school bus, shall, upon conviction, be punished in accordance with Subsection E.
In this case, Ruffin violated LSA-R.S. 40:967 which provides in pertinent part:
Sec. 967 Prohibited actsSchedule II, penalties
A. Manufacture; distribution. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally: (1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II.
Cocaine is a Schedule II drug pursuant to LSA-R.S. 40:964. The elements of distribution of cocaine are knowingly or intentionally distributing a controlled dangerous substance classified in Schedule II.[7]
A defendant is guilty of distribution of cocaine when he transfers possession or control of cocaine to his intended recipient. State v. Smith, 97-222, p. 6 (La. App. 4 Cir. 4/7/99), 734 So.2d 826, 831. Only general intent is required. State v. Chapman[Chatman], 599 So.2d 335 (La. App. 1 Cir.1992). Such intent is established by mere proof of voluntary distribution. Id. The state must show (1) delivery or physical transfer; (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance. Id.[8]
Ruffin argues that the state failed to prove he knowingly or intentionally distributed cocaine. However, the state produced the testimony of Officer Carter summarized above, which proves that Ruffin voluntarily delivered or physically transferred the cocaine when he handed the drugs to Officer Carter. Guilty knowledge of the cocaine at the time of transfer was shown when Officer Carter testified she had a conversation with a female regarding the purchase of two twenties of crack cocaine, the female returned to the parking lot with Ruffin, the female told Ruffin what Officer Carter wanted, and he handed two crack cocaine rocks to Officer Carter. The exact identity of the cocaine was stipulated to when then the prosecutor and defense counsel agreed that if Mr. Kron were called to testify, he would have testified that the two rock-like objects sold to Officer Carter were found to contain cocaine.
The drug transaction was videotaped and played for the judge. Officer Carter identified defendant in a photographic lineup. Officer Carter further testified that the drug transaction occurred approximately one block away from St. Christophers School. Sergeant Williams uncontradicted *632 testimony was that the distance between the property line of St. Christophers School and the property line of the La Village Motel was 98.3 feet and further, that the distance from the location of the drug transaction to the property line of the La Village Motel was 98.3 feet.
When the testimony and the other evidence introduced at trial is viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the state proved beyond a reasonable doubt that defendant knowingly or intentionally distributed cocaine within 1000 feet of a school.
As part of this assignment of error, Ruffin argues that he was denied the right to have the state prove that the two rocks sold to Officer Carter contained cocaine, because his counsel stipulated that the two rocks contained cocaine. This alleged error relates to trial strategy. Ineffectiveness of counsel, relating to trial strategy, cannot be determined by review of the record on appeal. Such a claim must be asserted by application for post-conviction relief where the issue can be fleshed out through an evidentiary hearing, if necessary, to determine, among other things, the defense strategy and whether the defendant was himself aware of the strategy and acquiesced in it.[9] Therefore, Ruffins claim regarding his counsels trial strategy with respect to the stipulation should be asserted by application for post-conviction relief.
This assignment is without merit.
Ruffin also urges that the trial court erred when it failed to consider the sentencing guidelines and abused its discretion, sentencing him to an unconstitutionally excessive sentence both on original imposition and again at the multiple offender proceedings. It is further urged that the court erred in basing Ruffins multiple offender sentence on the erroneous premise that he had been originally sentenced to thirty years instead of the actual twenty years.
Ruffin did not file a timely Motion To Reconsider Sentence after his original sentencing. However, because the sentence was vacated at the multiple offender proceedings, this claim is moot. Ruffin did timely file the proper Motion To Reconsider Sentence after the multiple bill hearing. However, the record does not indicate that this motion has been ruled upon, and thus the allegations regarding excessiveness are premature. We remand the case to the district court for a ruling on this motion.[10] If the motion to reconsider sentence is granted and Ruffin is resentenced, he may appeal the new sentence. If the motion is denied, or if it already has been ruled on, he must move to relodge this appeal within 60 days of the date of the ruling on the motion to reconsider sentence or the date of this opinion, whichever is later.[11]
Ruffin, in his pro se brief, argues that he knowingly, but not intelligently, waived his right to a jury trial. He claims he was unaware of, and that the trial court failed to advise him, that in cases where punishment is necessarily confinement at hard labor, as in his case, a jury of twelve shall determine the verdict by a vote of ten of the twelve concurring, and that if the vote is less than ten, a mistrial shall be *633 ordered. In support of his position, Ruffin cites the case of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), as well as LSA-C.Cr.P. art. 780 (right to waive trial by jury), art. 782 (number of jurors required for concurrence), art. 775 (grounds for mistrial), and art. 812 (jury polling).
The exchange at trial regarding the jury trial waiver is as follows:
THE COURT:
All right. I understand your client is waiving his right to a jury trial and has elected to proceed with a judge trial, is that correct, Ms. Davis?
MS. DAVIS: (Defense counsel)
That is correct, Your Honor, and you can do the colloquy for the record.
THE COURT:
Lets swear Mr. Ruffin in.
BY THE COURT:
Q. All right, Mr. Ruffin, I understand at this time that you have indicated to your attorney you wish to waive your rights to a jury trial, and you wish to be tried by the Court alone in a judge trial; is that correct?
A. Yes.
Q. All right. And your attorney has explained to you that you have in fact a right to be tried by a jury of your peers. Do you understand that?
A. Yes, sir.
Q. And you are electing to proceed with a judge trial?
A. Yes, sir.
THE COURT:
I'm satisfied that the defendant is making a knowing, intelligent waiver of his rights to a jury trial, and we will proceed with a judge trial.
A defendant may waive his right to a jury trial and elect to be tried by the judge. LSA-C.Cr.P. art. 780. The trial judge may accept a waiver of a jury trial at any time prior to the commencement of trial. LSA-C.Cr.P. art. 780(B). A waiver of trial by jury is valid only if the defendant acted voluntarily and knowingly.[12] The waiver must be express and is never presumed.[13] The record must show a knowing and intelligent waiver.[14] Although it is preferred for the trial judge to advise the defendant personally on the record of his right to a jury trial and have the defendant waive the right personally on the record, the Louisiana Supreme Court has refused to mandate this method as an absolute rule.[15]
In the instant case, the trial judge stated that defense counsel had advised him that Ruffin wished to waive his right to a jury trial. Ruffin was then sworn in. The trial judge personally asked him, on the record, whether he had indicated to his attorney that he wished to waive his right to a jury trial and to be tried in a judge trial, whether his attorney had explained to him that he had a right to be tried by a jury of his peers, whether he understood that, and whether he was electing to proceed with a judge trial. Ruffin responded affirmatively to all inquiries. In addition to this express waiver, the record indicates that Ruffin had previous experience as an *634 accused in two criminal proceedings, both times pleading guilty. We find that these factors show he understood the proceedings.[16]
Ruffin claims he was unaware of, and that the trial court failed to advise him, that in cases where punishment is necessarily confinement at hard labor, as in his case, a jury of twelve shall determine the verdict by a vote of ten of the twelve concurring, and that if the vote is less than ten, a mistrial shall be ordered. Ruffin cites no cases in his pro se brief to support this contention. Neither the statutes nor the jurisprudence requires the trial judge to inform a defendant of the details involving the number of jurors and the votes necessary for a conviction, only that the waiver be knowing and intelligent.[17]
Ruffin cites Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), to support his position that the waiver was not intelligently made. Boykin involves the rights that must be given to a defendant when he pleads guilty to the crime with which he has been charged, and is inapplicable to this case where Ruffin did not plead guilty, but rather elected to proceed with a jury trial. Furthermore, while the trial judge must determine if the defendant's jury trial waiver is knowing and intelligent, that determination does not require a Boykin-like colloquy.[18] Therefore, considering the colloquy between Ruffin and the trial judge, we find that Ruffin knowingly and intelligently waived his right to a jury trial. This assignment of error is without merit.
Ruffin argues in his pro se brief that his trial counsel was ineffective for failing to ensure that a hearing on the motion to suppress identification, evidence, and confession was held prior to trial and that rulings on the motions were made prior to the introduction of evidence at trial.
On January 9, 2001, prior to trial, defense counsel filed several pre-trial motions, including a Motion To Suppress Confession, Evidence, and Identification. A pre-trial suppression hearing was not held. After Officers Carter, Gerdes, and Matranga testified, the state offered the stipulation relative to Mr. Kron's testimony. The following exchange then occurred:
MS. DAVIS: (Defense counsel)
Your Honor, the stipulation is accepted. Judge, we filed a motion last week, a motion to suppress the I.D. and the evidence in this case. I think we forgot to do them.
Can we use the trial as the same as the
THE COURT: Yes.
MS. DAVIS: Okay. I just wanted that on the record.
MR. AMSTUTZ: Okay. That's all right.
MS. DAVIS: Thank you, Judge.
After closing arguments, the trial judge stated:
As it regards the motions to suppress the motions to suppress identification are denied. The video tape [sic], which was played and admitted into evidence, showed that after initially making contact with a white female, the officer drove into the parking lot of the motel and she was approached, while seated in *635 her vehicle, by the white female, and the defendant, Castadel Ruffin.
Although the video tape [sic] does not show anything being handed by Mr. Ruffin to the undercover officer, it was her testimony that it was in fact Mr. Ruffin who took the money, and who handed her the drugs.
I don't think there is any question as to the identity of the individual depicted in that video tape [sic]. So, therefore, the State [sic] is convinced that it was in fact the defendant who engaged in the sale of the rock cocaine to the undercover officer.
As to the location and distances from the school yard, the testimony of Sergeant Williams was that he measured from property to property line, which was approximately ninety-eight feet.
It was his estimation that it was approximately the same distance to the area within the parking lot of the motel, and although it was merely an estimation, it's clearly obvious that if you add ninety-eight feet to another ninety-eight feet, it is not going to exceed one thousand feet.
At most, if he was wrong by a couple of hundred feet, it is, nevertheless, within a thousand feet of the school yard.
So, as a result of that testimony, this Court is convinced beyond a reasonable doubt that the sale did in fact take place within a thousand feet of a school, in accordance with the statute, and, therefore, I find the defendant guilty as charged.
We will set sentencing for May 30th.
MS. DAVIS: Thank you, Your Honor.
When the trial judge denied the Motion To Suppress Identification, defense counsel did not remark on the court's failure to rule on the Motion To Suppress Evidence. Additionally, during closing arguments, defense counsel did not argue that the motions to suppress should be granted. In the interest of judicial economy, a claim of ineffective assistance of counsel may be addressed on appeal when the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error.[19]
A defendant is entitled to effective assistance of counsel under the Sixth Amendment of the United States Constitution and Article I, Section 13 of the Louisiana Constitution. When a defendant seeks reversal of a conviction based on ineffective assistance of counsel he must satisfy both parts of the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), rehearing denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). First, defendant must show that counsel "committed errors so serious that he or she was not functioning as the `counsel' guaranteed a defendant by the Sixth Amendment." Strickland, supra at 466 U.S. at 687, 104 S.Ct. at 2064. The key question must be whether counsel's performance was reasonable considering all the circumstances.
Secondly, the defendant must show that the deficiency was so great as to prejudice the defense. This requires a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, one with a reliable result." Id. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, *636 436 So.2d 559, 564 (La.1983).[20]
There is no evidence in the record that the trial court ruled on Ruffin's pre-trial Motions To Suppress Confession and Evidence prior to trial. Rather, the record shows that Ruffin proceeded to trial without objecting to the trial court's failure to rule on these motions. If a defendant does not object to the trial court's failure to rule on a motion prior to trial, the motion is considered waived.[21]
The record reflects that, although defense counsel made some attempt to bring the motions to the trial judge's attention during trial, she did not state which motion (suppression of confession or of evidence) she wanted the trial judge to consider other than identification, or postulate any argument on behalf of any outstanding motions.
The transcript indicates that, although the Motion To Suppress Identification was denied prior to the verdict, the trial court did not rule on the Motion To Suppress Evidence. This is corroborated by the minute entry dated May 10, 2001 which states, "Motion to Suppress Identification denied by the Court." Additionally, there is no ruling on Ruffin's motion to suppress confession; however, the record does not indicate that Ruffin made a confession, nor does he argue in his brief or at trial that a confession was improperly admitted. This cannot therefore be a basis for ineffectiveness of counsel.[22]
When the trial judge denied the motion to suppress identification, defense counsel did comment on the court's failure to rule on the Motion To Suppress Evidence. Additionally, during closing arguments, defense counsel did not argue why the motions to suppress should be granted, and it is unclear on appeal exactly what evidence defense counsel was attempting to exclude.
We note, however, that the Motion as filed states:
The physical evidence intended for use against the defendant in this case was seized unlawfully and must be suppressed because:
1. A warrant was issued without probable cause, or the evidence was seized without a valid warrant, and/or
2. The evidence was seized without a valid exception to the warrant requirement and without probable cause to either arrest the defendant or to search the premises, persons, vehicles or areas searched.
The trial of this matter reveals that the physical evidence consisted of the cocaine sold to Officer Carter, the videotape of the transaction, photos, and a photo lineup, none of which evidence was seized. No evidence was introduced which might have been the subject of a motion to suppress. There was no need for the court to rule on these motions, and thus Ruffin's complaints of his counsel's performance do not amount to ineffective assistance of counsel.[23]
The record was reviewed for errors patent.[24] We note that the trial judge did not advise the Ruffin of his multiple offender rights, as required by LSA-R.S. 15:529.1. La. R.S. *637 15:529.1(D)(1)(a) requires that a defendant be advised of the specific allegations contained in the habitual offender bill and his right to a formal hearing at which the State must prove its case for the habitual offender status. Implicit in this requirement is the additional requirement that defendant be advised of his constitutional right to remain silent.[25] The trial judge also failed to inform Ruffin of this right. This Court has held that the failure of the trial court to advise a defendant of his right to a trial and to remain silent was harmless error where the multiple offender status was established by competent evidence offered by the State at the hearing, rather than by the admission of the defendant.[26] In the instant case, Ruffin did not testify at the hearing. On that same date, the State presented evidence at the multiple offender hearing to establish the defendant's multiple offender status.
To prove that a defendant is a multiple offender, the State must establish by competent evidence, that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. When a predicate conviction was obtained pursuant to a plea of guilty, the State must meet the burden of proof outlined by the Louisiana Supreme Court in State v. Shelton, 621 So.2d 769 (La.1993).
Under Shelton, if a defendant denies the allegations of the multiple bill of information, the State's initial burden is to show the existence of a guilty plea and that the defendant was represented by counsel when the plea was entered. Once the State meets this burden, defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity in the taking of the guilty plea. Id. at 779.[27]
Lt. Patricia Adams of the Jefferson Parish Sheriff's Office testified that she took Ruffin's fingerprints in court, and that his fingerprints matched those of Castadel Ruffin in "Parish of Jefferson versus Castadel Ruffin", cases # 90-5609 and # 90-348. In both cases, Ruffin pled guilty and was represented by counsel. At the hearing, Ruffin objected to the triple bill and urged that the conviction in case # 90-348 was incompetent as a predicate conviction. The court subsequently adjudicated Ruffin a double offender. On review, we find that the state proved Ruffin's adjudication as such with competent evidence. Therefore, the trial court's failure to advise the defendant of the specific allegations against him and of his right to be tried and to remain silent was harmless error.[28]
Finally, the trial court failed to advise Ruffin of the two-year prescriptive period for applying for post-conviction relief, as required by LSA-C.Cr.P. art. 930.8, either at the initial, or at the enhanced, sentencing. Accordingly, we remand the matter with instructions to the trial court to send the appropriate written notice to Ruffin regarding the prescriptive period for post-conviction relief and to file written proof in the record that he received the notice.
For the foregoing reasons, Ruffin's convictions on the instant charge and as a double multiple offender are affirmed. The matter is remanded in accordance with our instructions.
*638 AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] State v. Hearold, 603 So.2d 731, 734 (La. 1992); State v. Mayeux, 94-105 (La.App. 5 Cir. 6/28/94), 639 So.2d 828, 834.
[2] State v. Bush, 02-247 (La.App. 5 Cir. 6/26/02), 822 So.2d 859, 863 (relying on State v. Washington, 421 So.2d 887, 889 (La.1982)).
[3] State v. Alexis, 98-1145 (La.App. 5 Cir. 6/1/99), 738 So.2d 57, 64, writ denied, 99-1937 (La.10/13/00), 770 So.2d 339.
[4] State v. Rosiere, 488 So.2d 965, 968 (La. 1986).
[5] State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35.
[6] State v. Stec, 99-633 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787.
[7] State v. Alexander, 98-1377 (La.App. 4 Cir. 2/16/00), 753 So.2d 933, 936, writ denied, XXXX-XXXX (La.4/12/01), 790 So.2d 2 (citing State v. Brumfield, 93-2087 (La.App. 4 Cir. 6/30/94), 639 So.2d 1196).
[8] State v. Johnson, XXXX-XXXX, XXXX-XXXX, p. 7 (La.App. 4 Cir. 5/29/02), 825 So.2d 1230, 1233.
[9] State v. Washington, 00-1312, p. 18 (La.App. 5 Cir. 5/16/01), 788 So.2d 596, 607, writ denied, XXXX-XXXXX (La.5/3/02), 815 So.2d 94.
[10] See State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 81, writ denied, 98-0264 (La.6/19/09), 719 So.2d 481; State v. Simmons, 00-1037 (La.App. 5 Cir. 2/28/01), 781 So.2d 821, 826.
[11] See, State v. Winfrey, supra.
[12] State v. Kahey, 436 So.2d 475, 486 (La. 1983); State v. Quest, 00-205 (La.App. 5th Cir.10/18/2000), 772 So.2d 772, writ denied XXXX-XXXX (La. 11/2/01), 800 So.2d 866.
[13] State v. Kahey, supra, at 486; State v. Herrera, 98-677 (La.App. 5 Cir. 2/10/99), 729 So.2d 75, 80.
[14] State v. Quest, supra; State v. Herrera, supra.
[15] State v. Kahey, supra; State v. Quest, supra.
[16] See State v. Quest, supra.
[17] State v. Williams, 99-223 (La.App. 5th Cir. 6/30/99), 742 So.2d 604.
[18] State v. Roberts, XXXX-XXXX (La.App. 3 Cir. 10/3/01), 796 So.2d 779, 788, writ denied, 2001-2974 (La.9/20/02), 825 So.2d 1163 (citing State v. Frank, 549 So.2d 401 (La.App. 3 Cir.1989)).
[19] State v. McIntyre, 97-876 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753 (citing State v. Peart, 621 So.2d 780, 787 (La.1993)).
[20] State v. Franklin 94-409 (La.App. 5 Cir. 12/14/94), 648 So.2d 962.
[21] State v. Gordon, 00-1013 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 149 (citing State v. Post, 98-869, p. 9 (La.App. 5 Cir. 2/10/99), 729 So.2d 38, 42).
[22] See State v. Franklin 94-409, supra.
[23] State v. Franklin, supra.
[24] C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[25] State v. Walker 01-348 (La.App. 5 Cir. 8/28/01), 795 So.2d 459.
[26] State v. Walker, supra.
[27] State v. Davis, 02-387 (La.App. 5 Cir. 9/30/02), 829 So.2d 554.
[28] See, State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 583.